HENRY F. WINGERT, Assignee. *vs.* HARVEY B.
BREWER, et al.

*Mortgages*: *foreclosure; injunctions to restrain—; parties; ven-
dee of the mortgagor; tender of principal and costs; right
of assignee to receive—. Bond: nunc pro tunc.*

A party who is a vendee of mortgaged property, under an
option from the mortgagor, has a right to redeem the prop-
erty, and to make a tender to the mortgagor of the principal
and interest and the costs if the sale has been advertised.

p. 521

Such a vendee has an interest in the property which equity
will recognize and protect under section 16 of Article 66 of
. the Code of Public General Laws. ` p. 521

Upon such a tender being made by the mortgagor he is enti-
tled, under section 18, Article 66 of the Code of Public Gen-
eral Laws, to an injunction to restrain the foreclosure of the
mortgage. p. 521

An assignee of a mortgage to whom the assignment was made
"for the purpose of foreclosure and collection" has the right
to collect the purchase money if he sells the property, or,
prior to the sale and after advertisement, he may receive
from the mortgagor, or anyone entitled to redeem the prop-
erty, the amount due with interest, etc. p. 522

Where, before foreclosure, it is observed that the bond, required
by Article 66, section 18 of the Code of Public General Laws,
to be filed before the granting of any injunction to stay the
proceedings, has not been filed, the injunction should be dis-
solved, and a new one issued upon the filing of the bond.

p. 523

Although a *nunc pro tunc* order giving effect to a bond as if it
had been previously filed, can not give the bond a retroactive
effect, it may be treated as an order granting a new injunc-

tion, or making the one already issued effective, upon the giving of the bond. pp. 523-524

If no such bond is filed the ratification of the sale may be excepted to by any party in interest. p. 524

*Decided November 15th, 1911.*

Appeal from the Circuit Court for Washington County, sitting in equity (KEEDY, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Henry F. Wingert* (with whom was *Miller Wingert* on the brief), for the appellant.

*Charles D. Wagaman* (with whom were *Abraham C. Strite* and *Wagaman and Wagaman,* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Washington County continuing a preliminary injunction which had previously been issued on the petition of Samuel W. Sowers against Henry F. Wingert, assignee. The petition alleges that on the 26th of September, 1910, Harvey B. Brewer, who was possessed of a tract of land containing about sixty acres, together with his wife entered into a contract to sell it to Sowers for the sum of twelve thousand dollars, of which amount $1,500.00 was to be paid on or before November 1st, 1910, and the residue on or before April 1st, 1911; that the said Brewer and wife had on April 1st, 1905, executed a mortgage to Jacob H. Cost for $4,660.00 and that on the 9th of December, 1910, he assigned it to Henry F. Wingert, for purpose of foreclosure and collection, who had advertised the property for sale on the 3rd of January,

1911. It further alleges that the petitioner notified Brewer on the 25th day of October that he would go to his residence the next day and pay him the $1,500.00; that he went there but was unable to find him, and on the same day he wrote him a letter that he would call at 2 o'clock P. M. on October 29th to fulfill his part of the contract and pay the $1,500.00; that he did go but was unable to find Brewer; that he went again on November 1st, but failed to find him, and on that day he paid to the clerk of the Court the $1,500.00 which he alleges he was ready, since October 25th, 1910, at all times to pay and also charges that Brewer wilfully, deliberately and fraudulently absented himself from his usual residence so as to avoid petitioner.

It also alleges that he called upon Mr. Wingert and asked the amount of the interest accrued on the mortgage, so that he might correctly ascertain the amount due, but that Mr. Wingert declined to inform him; that acting upon the best information he could get, he on the 30th of December tendered to Mr. Wingert $4,494.77, which represented the principal, interest from April 1st, 1910, one-half of the commissions on the mortgage debt, the Court costs and costs of advertising, and requested him to assign and transfer the mortgage to him, or accept said sum in payment of the mortgage and release it, or if the tender were insufficient or incorrect for any reason to advise him of the amount claimed, so that it might be tendered and the mortgage paid off, but he declined to accept said sum and refused to release the mortgage or to assign it to petitioner or to advise him as to the real amount claimed to be due. He then paid the $4,944.77 into Court. Amongst other prayers in the petition was one that said Wingert be enjoined from selling the property.

A preliminary injunction was issued on December 31, 1910. On the 3rd of January the Court passed an order reciting that as no provision was made or order passed requiring the plaintiff, or someone in his behalf, as a condition precedent to the issuing of the injunction, to execute and file a

bond as provided by section 18 of Article 66, therefore in order to correct said omission and oversight, it was ordered that the plaintiff or some person on his behalf at once execute and file a bond in the penalty of $1,000.00, conditioned as set forth in said section, and it was further ordered that the order and bond be given effect *nunc pro tunc.* The bond was filed and approved as of the 31st of December, 1910, on January 3rd, 1911.

On January 5th an answer was filed and motion to dissolve the injunction made. Testimony was taken and the Court refused to dissolve the injunction, but continued it until final hearing and until the further order of the Court. From that decree this appeal was taken.

There can be no doubt that if Mr. Sowers succeeds in establishing the option, his acceptance of it and a *bona fide* attempt to carry out the contract but that it was prevented by Mr. Brewer without his fault, he had such an interest in the property as a Court of equity will recognize and protect. Section 16 of Article 66 of the Code prohibits the granting of an injunction to stay a sale, or any proceedings after a sale of mortgaged premises, "unless the party praying the injunction shall be also a party to the deed of mortgage in virtue of which the property sold or offered for sale shall have been mortgaged, or shall claim under such party a right to or interest in such mortgaged premises, derived and accruing after the time of recording such mortgage." If then Mr. Sowers has a valid contract by reason of the exercise of the option, he is clearly embraced within the provisions of the latter clause. It would be useless to contract for the purchase of property upon which there is a mortgage, if the vendee be not entitled to redeem it, and a denial of that right might enable a vendor who afterwards became dissatisfied with the bargain to avoid it, if he can induce the mortgagee to foreclose.

If then Mr. Sowers had the right to redeem, which he had, provided the contract is binding, and *prima facie* it was, there can in our judgment be no doubt that he made a suffi-

cient tender to entitle him to the injunction. It is not claimed in the answer that the amount tendered was not sufficient to include the principal, interest, costs and everything which the mortgagee, or his assignee, could demand. It is contended, however, that the principal and interest should have been tendered to the mortgagee and the costs and commissions to the assignee, but is that correct? This mortgage was assigned to Mr. Wingert, under the hand and seal of the mortgagee, "for the purpose of foreclosure *and collection.*" It can not be doubted that such an assignee can collect the purchase money if he sells the property, and he is required to give bond "to abide by and fulfill any order and decree which shall be made by any Court of equity in relation to the sale of such mortgaged property or the proceeds thereof." If he can not prior to a sale but after advertising receive from the mortgagor, or anyone entitled to redeem, the amount due, in many cases great injustice would be done.

A mortgagee residing in a foreign country or at a great distance in this country might make such an assignment, but according to the appellant's contention, the mortgagor, or anyone claiming under him, could not redeem because the mortgagee could not be reached in time to prevent a sale. As we have seen, this assignment in terms was "for the purpose of foreclosure *and collection,*" and a Court of equity would not permit an assignor to deny the power of such an assignee to collect before sale the amount that was due, including costs, etc. The privilege of making an assignment for such purpose is often of great convenience to a mortgagee, but the power of sale in mortgages authorized by our statute might easily be made an instrument of oppression, if a mortgagee would by assignment confer the power upon another, giving him full authority to sell, but at the same time reserve in himself alone the right to receive what is due, if it is sought to be paid before the sale. The case of *Taylor* v. *Carroll,* 89 Md. 32, relied on by the appellant, does not go to such an extent. The mortgage before the

Court in that case had been assigned to John Scott, Jr., "for the purpose of foreclosure only," as was admitted in the answer. Mr. Scott having died, his administrator undertook to sell under the power. We held that no such interest had been acquired by Mr. Scott as devolved upon his administrator. As he had no beneficial interest in the mortgage, his estate had none, and hence nothing passed to his administrator, but in this case the assignee was living and had the right not only to foreclose but expressly to collect, even if the power to foreclose alone would not have embraced the right to collect before sale. So while it would have been proper to have made the mortgagors and the mortgagee parties to the bill, so that all questions might be definitely determined, the failure to do so was not sufficient to invalidate the injunction or to require its dissolution—the object of the injunction being to prevent the assignee from selling.

We will next consider the effect of the omission to require a bond before granting the injunction. Section 18 of Article 66 makes the bond a condition precedent to granting an injunction to stay a sale or any proceedings after a sale of mortgaged premises under that Article. It says, "Before granting any such injunction the Court or judge granting the same shall require the plaintiff or some person on his behalf, with at least two good securities" to execute and file a bond, etc. It is therefore unlike the case of an ordinary injunction, in which requiring a bond is generally discretionary with the Court, as when one is issued under this article the requirement is mandatory, but with that concession it does not follow that there was reversible error in not dissolving the one issued in this case. When the omission was observed the better practice would have been to dissolve the injunction, or declare it of no force by reason of the omission and then grant a new one, to be issued upon the execution and filing of a bond. The Court undoubtedly had the power to do that, and although the order passed on January 3rd which undertakes to give effect *nunc pro tunc* to the bond, as if filed

before the granting of the injunction, could not in our judgment give it a retroactive effect, it can be treated as equivalent to an order granting a new injunction or making the one already issued effective upon the giving of the bond. It would not do to make the injunction relate back to December 31st, for if that could be done the party enjoined might be held liable for contempt before the injunction was valid, but simply making it effective from the time the bond was given would have a different effect. No motion to dissolve had been made, nor any other steps taken by the defendant before the order of that date was passed. After it was passed nothing was done by the defendant until January 5th, when he filed an answer and made a motion to dissolve the injunction, but no objection to the injunction having been issued before the bond was given was made and there was no reference to that until January 14th when the defendant called a deputy clerk as a witness and proved the dates of issuing the injunction, filing the bond, etc.

The bond was filed on the day the sale was advertised to take place, and, although the hour is not shown, it was stated at the argument and not denied that it was given before the time of the sale. After it was filed, if in proper form, which in the absence of something to the contrary we must assume it was, although it is not in the record, the appellant was protected and those executing it would not under the circumstances have been permitted to deny their liability on it by reason of the injunction having already been actually issued. The appellant was, therefore, protected by the bond after it was filed, but he would not be if his contention be adopted that the proceeding was a nullity even after the order of January 3rd. If that be so then he could not have redress against the bond, if the injunction is finally dissolved.

If no injunction had been issued and a sale had taken place, Sowers could have excepted to the ratification of the sale. In *Kent Building Co. v. Middleton,* 112 Md. 10, it was said, "As the mortgagee has no right to make the sale after a

lawful tender of the amount due, the sale, when made, may be excepted to by the party authorized to redeem the mortgage and who made the tender." It was certainly better for the mortgagors to have the question settled in advance of sale, for if one had been made after the tender the property would not likely have brought its value, as people do not generally care to subject themselves to law suits, which a purchaser would likely have done if the sale had taken place, and the appellant and the mortgagee are better protected by the perhaps somewhat liberal, but more equitable construction of the order of January 3rd we give to it than they might be if we adopted the appellant's theory.

But in addition to what we have said, before the injunction was ordered, the sum of $4,494.77 had not only been tendered, but had been actually paid into Court. There is nothing to show that that sum did not cover the whole of the principal, interest, costs and expenses, and Sowers did all that could have been required of him to ascertain the precise amount that was due. No possible damage could therefore be sustained by the mortgagors, the mortgagee or the appellant by staying the sale. There was no such question as sometimes arises—whether the mortgagee should, *contrary to his wishes,* be required to accept payment of the mortgage from someone whose right to make the payment is denied, for in this case the mortgagee had taken steps to enforce payment and therefore presumably wanted the mortgage paid. If Sowers chose to pay it, and it was eventually held that he had no such claim on the property as to give him the right to redeem, neither the mortgagee nor the appellant could be injured by the payment, and surely the mortgagors could not be. It is true that the supplemental record shows that the appellant is an attorney for the mortgagor, but in making a sale under the mortgage he is presumed and is required to respect the rights of all parties and he would have had no right to insist upon making the sale to enable Mr. Brewer to escape from the obligation of his contract.

So under all the circumstances we are of the opinion that there was no reversible error in the learned judge refusing to dissolve the injunction and in continuing it until final hearing. When the injunction was applied for, a case was pending in which Sowers was seeking specific performance, and the question whether the option is valid and other questions raised can be decided in connection with that proceeding. Then this case can be finally determined.

*Order affirmed and cause remanded,*
*the appellant to pay the costs.*