ARTHUR BRISBANE

*v.*

JAMES A. SULLIVAN et al.

[Decided March 2d, 1914.]

1. Although an agreement to convey lands does not contain the phrase "good title," if it does contain a covenant to "well and sufficiently convey" to complainant's assignor, "his heirs and assigns by deed of full covenant and warranty, free from all encumbrance except," &c., this means that the vendor is bound to make a good title.

2. The vendor having agreed that he would make a good title, and finding it impossible to do so, must, at the call of the vendee, convey what interest the vendor has, and receive the purchase-money, less an abatement thereof equal to the value of the interest not conveyed.

3. A purchaser on a bill for specific performance filed by the vendor will not be compelled to accept compensation or indemnity, but on a bill by the purchaser the vendor will be required to allow compensation if he should be able to make title for a part, but not for the whole, if the purchaser consents to accept part performance with compensation.

4. This rule prevails whether the deficiency relates either to the quantity or the quality of the estate, that is to the physical amount or tenure of the holding.

5. The complainant in this suit being entitled to a decree that the defendants convey to the complainant whatever interest they have as life tenants during the life of a named person or otherwise, the deduction to be allowed is to be determined by ascertaining the value of the life estate and deducting the amount thereof from the total purchase-money, which will leave the sum to be allowed for compensation.

6. But in this adjustment of the equities between the parties, the complainant must give up his claim for a warranty deed or must submit himself to a perpetual injunction to be provided for in the decree, against bringing any action, either at law or in equity, for the violation of any express or implied covenants on the part of the vendor touching the land in question.

---

On final hearing on bill, answer, replication and proofs.

*Mr. Adrian Riker,* for the complainant.

*Mr. Randolph Perkins,* for the defendants.

HOWELL, V. C.

This is a suit for the specific performance of an agreement to convey lands. On July 8th, 1889, the lands in question belonged to Thomas H. N. Wilks. On that day he died, leaving a will in and by which he devised the said property to Dora E. Wilks for the term of her natural life, and at her death to the heirs of her body born in lawful wedlock, with a devise over in case of failure of issue. Dora E. Wilks subsequently married William P. Kastenhuber; she has become the mother of two children, born in lawful wedlock, both of whom are infants under the age of twenty-one years. Mr. and Mrs. Kastenhuber and the two children are living. Mrs. Kastenhuber, the life tenant, allowed the

taxes assessed by the city of Jersey City against said premises
to remain unpaid. Thereupon they were sold, and by direction
of the circuit court of Hudson county a deed therefor was de-
livered to Charles R. Dieffenbach, the purchaser at the tax sale.
He subsequently conveyed the same to William P. Kastenhuber,
the husband of the life tenant, and they joined in a conveyance
to James Billington, who in turn conveyed the same to the de-
fendant Ella J. Sullivan. Miss Sullivan took title, not for her-
self, but for her brother, the defendant James A. Sullivan, who
advanced the purchase-money. James A. Sullivan thereupon
made the contract in question on July 19th, 1910. By this con-
tract he agreed that he would convey the premises in question
to Bennett Milnor, in consideration of the sum of $4,800, by
deed, "of full covenant and warranty, free from all encumbrance,
except a mortgage of $2,000 held by Jennie Turner," on or be-
fore September 1st next ensuing the date thereof with stipula-
tions concerning the method of the payment of the purchase-
money. Milnor was acting for the complainant, and he subse-
quently made an assignment in writing to him of all his interest
in the said contract. After the contract had been executed, and
while it was in the way of performance, it was discovered that
there were serious defects in the defendant's title. These de-
fects are set out in a report made to the Title Guaranty Com-
pany which had undertaken to guarantee the title to the com-
plainant, which report is annexed to the answer and is admitted
in evidence under a stipulation filed on the day of the hearing.
One of the serious objections is that title was made by virtue of
a proceeding taken under what is known in this state as the
Martin act, which proceedings are admitted by the said stipula-
tion to be informal and not binding upon the Kastenhuber
children.

The objections to the title made it necessary to postpone the
performance of the contract, and it is was postponed by writing
until October 1st, 1910, and subsequently to October 15th, 1910.
The complainant filed his original bill for the specific per-
formance on February 28th, 1911. At that time he had been in-
formed of the exact state of the title and knew that the defend-
ant Sullivan had at most only a right which depended upon the

life of Mrs. Kastenhuber, and that this right possibly depended upon informal proceedings under the taxing laws which were not binding upon the Kastenhuber children. He subsequently filed an amended bill in which he states that he has elected to accept from the Sullivans such title as they are able to convey to him, and he tenders himself ready and willing to pay to them a proportionate part of the purchase-money agreed upon to be ascertained by the court, or, in other words, he proposed to take such title as the Sullivans can give him, with a deduction from the purchase price for the value of that portion of the estate which cannot be conveyed.

Specific performance of this contract is resisted upon the grounds above indicated, and upon the further ground contained in the list of objections that there are a judgment and several criminal recognizances uncanceled of record which may be liens upon the land. Inasmuch as there is no testimony whatever in the case of the facts relating to the judgment and recognizances, I shall assume that they are included rather as a makeweight. As to the estate which the Sullivans now have in the premises, the defendants say that it is very uncertain and doubtful whether they have an unquestionable title for the life of Mrs. Kastenhuber, arguing that when Mr. Kastenhuber made his deed to Billington, Mrs. Kastenhuber joined in the conveyance merely to release her right of dower. But this cannot be the case; she either had a life estate in the whole property or she had not; if she had a life estate in the whole property, and the tax proceedings did not affect it because of their irregularity, she was left at their termination in the same position as if there had been no tax proceedings, and her joint deed with her husband would operate to convey any interest that she might have, either as life tenant or doweress, or otherwise, and because of her execution of the deed to Billington, the Sullivans undoubtedly have the right to the possession of the premises during the life of Mrs. Kastenhuber. Therefore, the only title which the Sullivans became possessed of was a right to enjoy the rents, issues and profits of the premises during the lifetime only of Mrs. Kastenhuber; and they therefore cannot comply specifically with the agreement that Mr. Sullivan entered into to con-

vey title to the premises. It is true that the agreement does not contain the phrase "good title," yet it does contain a covenant to "well and sufficiently convey" to Milnor "his heirs and assigns by deed of full covenant and warranty, free from all encumbrance except," &c. This means that the vendor is bound to make a good title. *Lounsbery* v. *Locander, 25 N. J. Eq. 554; Skinner* v. *Christie, 52 N. J. Eq. 720; Meyer* v. *Madreperla, 68 N. J. Law 258 (Court of Errors and Appeals)*. Under no circumstances, therefore, could the vendor succeed on a bill for specific performance; but the position of the vendee is different. The vendor having agreed that he would make a good title, and finding it impossible to do so, must, at the call of the vendee, convey what interest he has and receive the purchase-money, less an abatement thereof equal to the value of the interest not conveyed. This was held in the recent case of *Farrell* v. *Bork, 79 Atl. Rep. 897; affirmed, 76 N. J. Eq. 615*. There the vendor had title to only a three-fourths interest in the lands in question. He contracted to convey the entire title. The vendee elected to accept such title as the vendor could convey, and it was held that he was entitled to a decree for the specific performance of the contract, less one-fourth of the title upon payment of three-fourths of the purchase-money. This was in 1910, but long prior to that, it was held by our appellate court, in *Lounsbery* v. *Locander (1874), supra,* that a purchaser on a bill for specific performance filed by the vendor would not be compelled to accept compensation or indemnity, but that on a bill by the purchaser the vendor would be required to allow compensation if he should be able to make title for a part but not for the whole and if the purchaser consents to accept part performance with such compensation. A similar ruling was made in this court in *Borden* v. *Curlis, 48 N. J. Eq. 128*, and in *Keator* v. *Brown, 57 N. J. Eq. 600*.

The English cases disclose a similarity of judicial thought, as will appear by an examination of the cases from those courts cited in the brief on behalf of the complainant. *Nelthorpe* v. *Holgate, 1 Coll. 204; Barnes* v. *Wood, L. R. 8 Eq. 424; Barker* v. *Cox, L. R. 4 C. D. 464*.

This rule seems to prevail whether the deficiency relates to

either the quantity or the quality of the estate, that is to the physical amount or the tenure of the holding. In *Tobin* v. *Larkin, 183 Mass. 389,* the deficiency was one-twelfth part of the property which the vendor did not own, but the rule was enforced against him; and in *Barnes* v. *Wood, supra,* the husband, who had only an estate *pur auter vie,* contracted to convey the fee. The purchaser elected to take what title he could give, with a proper allowance by way of compensation for the deficiency. In that case Vice-Chancellor James says: "The plaintiff entered into a contract with him in ignorance of any defect in title. The husband, therefore, would be bound to convey whatever interest he had. The defendant is bound to the same extent, and it is for the court to find out in the best way it can how compensation can be made. There must be a declaration that the plaintiff is entitled to a specific performance of his contract to the extent of Springer's interest, with a reference to inquire what compensation should be made for the outstanding interest."

My conclusion, therefore, is that the complainant is entitled to a decree that the defendants Sullivan and sister convey to the complainant whatever interest they have as life tenants during the life of Mrs. Kastenhuber, or otherwise, and it only remains to ascertain what deduction should be made from the agreed purchase-money to compensate the complainant for the deficiency in the title. This can easily be determined by ascertaining the value of the life estate and deducting the amount from the total purchase-money, which will leave the sum to be allowed for compensation.

But in this adjustment of the equities between the parties the complainant must give up his claim for a warranty deed, or must submit himself to a perpetual injunction, to be provided for in the decree, against bringing any action, either at law or in equity, for a violation of any express or implied covenants on the part of the vendor touching the land in question. If the vendor intended to pay the whole of the purchase-money he might possibly be remitted to his remedy on the covenants, but inasmuch as he is now being compensated for the breach of the covenants, he cannot insist upon their insertion in the deed, or on any right of action in respect thereof.