# HENRY SHIRK

*vs.*

## JOHN L. CORNELL, Trustee.

*Assignment of Mortgage—As Condition of Payment—Authority of Attorney.*

The attorney of the assignee of a mortgage, though he has been appointed trustee to sell thereunder, cannot assign the mortgage or the decree for sale.                           p. 394

The holder of a mortgage may properly demand the sum due, part of the trustee's commissions, and the costs, as a condition of compliance with a request for an assignment, made by the owner of the equity of redemption immediately before the exercise of the power of sale.                           p. 396

The owner of the equity of redemption, merely as such, cannot demand that, on his payment of the mortgage debt, the holder of the mortgage assign it in accordance with his directions.                           p. 397

*Decided April 28th, 1920.*

Appeal from the Circuit Court of Baltimore City    (GORTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Henry Shirk,* with whom was *James W. Bowers* on the brief, for the appellant.

*John L. Cornell* and *Charles F. Stein,* with whom was *Allan Cleveland* on the brief, for the appellee.

Boyd., C. J., delivered the opinion of the Court.

This is an appeal from an order ratifying a sale made by John L. Cornell, who was appointed trustee to make sale of a leasehold property known as No. 2305 Maryland Avenue in the City of Baltimore, under a decree authorized by Article 4 of the Code of Public Local Laws for the foreclosure of mortgages in case of default. The mortgage is dated the 8th of January, 1903, and was given by Mortimer S. Lawrence to the Merchants and Mechanics Permanent Building and Loan Company of Baltimore City for $1,500. It contains the usual assent of the mortgagor to an *ex parte* decree, as authorized by the local law. It was on the 8th of February, 1907, assigned to Hugh Doyle, Jr., and Cora M. Doyle, his wife. A decree for the sale was passed on the 13th of June, 1919, and the sale was made on the 8th of July. According to the statement of the mortgage debt filed in the case there was the sum of $1,545.00 still due on the mortgage. On the day it was executed by Lawrence he conveyed the property subject to it to Henry Shirk, the appellant. On the 6th of March, 1916, he conveyed it to Charles G. Baldwin, who has filed a petition in the case seeking to require the trustee to turn over to him any surplus of income or *corpus* in his hands, after the payment of the mortgage claim and costs. The deed to Baldwin was made to secure the payment of a loan of $2,000.00, as seems to be admitted by the parties to this proceeding. The property is subject to an irredeemable ground rent of $100.00 per annum. The appellant testified that the amount due Baldwin was not over $2,600.00, and according to a statement filed by him there were judgment liens prior to the Baldwin claim amounting to $1,477.35, and also ground rent, taxes and water rent amounting to $234.88 against the property, which brought $4,200.00, subject to the ground rent, at the sale. The witnesses of the appellant, outside of his own evidence testified that it brought all, if not more than it is worth. Mr. Tippett testified that he believed it sold for as high a price as is possi-

ble to get for it, and Mr. Lindsay said it was "A very big price. It was considerably more than the property is worth in my estimation." As will be seen later, those gentlemen were acting in the interest of the appellant about the time of the sale. There is nothing to the contrary in the evidence as to the value, excepting Mr. Shirk's estimate, which is $10,-000.00, but it is manifest that the price realized was the result of two parties interested in property in the immediate vicinity bidding against each other, and there can be no doubt under the evidence that its full market value was obtained.

There can, therefore, be no ground for setting the sale aside, unless the appellant's contention that he had arranged to borrow the money to take up the mortgage and that Mr. Cornell had agreed to assign it to Mr. Tippett, who had agreed to take it and hold it for his, appellant's, benefit, until he could get his finances in better shape, can authorize the Court to do so. As the mortgage debt is admitted, and the principal had been due for over twelve years, even if there was no other default, it cannot be said that there was any undue haste in enforcing payment of it. Just how Mr. Cornell was authorized to collect the rent is not clearly explained in the record, but he seems to have had such authority in some way, and to have kept the interest paid. The property had been previously sold under another mortgage, but the sale was set aside because the Court deemed the amount realized from another property contained in that mortgage sufficient to pay it.

Much of the evidence in the record has no bearing on the exceptions before us, although it shows that Mr. Shirk was very much involved and that Mr. Tippett, as a brother attorney, was endeavoring to aid him in straightening out his affairs. The only conflict in the testimony that can have any bearing on this appeal was between that of Mr. Lindsay and Mr. Cornell, in reference to a proposed assignment of the mortgage to Mr. Tippett. Mr. Lindsay testified that Mr.

Shirk had told him that Mr. Cornell was willing to assign
the mortgage and he spoke to Mr. Tippett about it, who said
that he was willing to take an assignment of it; that he called
up Mr. Cornell and told him that they were ready to take the
assignment, and he said: "My understanding of the matter
is that we had an absolute agreement that he (Mr. Cornell)
would assign the mortgage to Mr. Tippett and I considered
the incident closed. That was one afternoon. The next
morning I called up Mr. Cornell to actually execute the as-
signment and pay the money and Mr. Cornell then told me
he would not be able to do it. He said that the agreement
which he had made with me the day before was subject to his
client's approval and his client did not approve, and would
not do it, and I would not be able to get the assignment. I
told Mr. Cornell at that time that there were not any strings
added to the agreement that we had made, that it was not to
be submitted to anybody's approval, that I understood it was
an absolute agreement to assign it, and that I considered we
were entitled to it."

It is not shown in Mr. Lindsay's testimony just when the
conversation took place, but apparently it was the day before
or the day of the sale. Mr. Cornell testified that he told
Mr. Shirk that at any time he had the amount he would sub-
mit to his client the proposition of assigning the mortgage,
and advise him to accept it; that Mr. Lindsay spoke to him
about taking the assignment, and he told him that whenever
he was ready to do so he would take it up with Mr. Doyle;
that on July 7th about three o'clock (which was the day be-
fore the sale) Mr. Shirk and Mr. Lindsay came to his office
and Mr. Lindsay said they were ready to take an assignment
of the mortgage; that he told him he would see his client that
evening and would let him know the next day; that after he
reached his home Mr. Lindsay called him on the telephone
and he again told him that he would see Mr. Doyle that
evening, that Mr. Lindsay said: "All right, do the best you
can for me"; that he talked it over with Mr. Doyle that even-
ing and they came to the conclusion that if they sold the

mortgage to Mr. Lindsay, they ought to sell a judgment which the building association had, as he had "laid the judgment in this case," and the association would probably recover the loss it had sustained in one of the foreclosures spoken of by Mr. Shirk, and Mr. Doyle told him he should take it up with Mr. Lindsay; that he called Mr. Lindsay on the telephone the next morning and told him he wanted to dispose of the judgment as well as the mortgage; that Mr. Lindsay became very much excited and said that he would not have anything more to do with him. The building association spoken of was, we understand, one in which Mr. Doyle was an officer and Mr. Cornell was attorney.

Mr. Cornell further testified that later Mr. Shirk came to his office and Mr. Doyle happened to be there on another matter; that was Tuesday morning prior to the sale, which was made at four o'clock that afternoon; that Mr. Doyle then told Mr. Shirk that if he would get the $1,500.00 and pay the costs, and $40.00 commissions, he and his wife would assign the mortgage; that Mr. Shirk went out and Mr. Doyle waited as long as he could and left, telling him that if Mr. Shirk came back and wanted him, to call him up and he would come to his office at once; that Mr. Shirk called up later and he told him that Mr. Doyle had gone, but had left word to call him if he was wanted; that he did not see anything more of Mr. Shirk or Mr. Lindsay until the sale. On cross-examination he testified that Mr. Shirk said that he had not been able to find Mr. Lindsay, and he told him when he found him he would get Mr. Doyle over the telephone.

It is thus seen that there was a misunderstanding between Mr. Lindsay and Mr. Cornell as to what the latter said, or as to what he meant by what he did say. But, of course, Mr. Cornell could not assign the mortgage, and in order to make it effective the assignment had to be executed by Mr. and Mrs. Doyle, who owned the mortgage, and he could not assign the decree unless authorized to do so by Mr. and Mrs. Doyle. He had no power, either as attorney or as trustee, to

Md.]

assign the mortgage or the decree, so far as the record dis-
closes.    It is, therefore, not necessary to determine whose
recollection, as to what occurred between Mr. Lindsay and
Mr. Cornell, was correct, although the burden would be on
the appellant to establish the agreement, if that was relevant
or material, and in passing on that question the want of
power of Mr. Cornell to act without the approval of Mr. and
Mrs. Doyle would have to be borne in mind.

But beyond what we have said, the offer of Mr. Doyle to
Mr. Shirk, on the morning of the day of sale, to assign the
mortgage upon payment of the $1,500.00, the costs and
$40.00 commissions, as testified to by Mr. Cornell, is not
denied in the evidence.    The only thing reflecting upon it on
the part of the appellant is that he testified in chief, after
saying that Mr. Lindsay called up Mr. Cornell and told him
they were ready to take the assignment, to which Mr. Cor-
nell replied, he would not do it unless they paid the $349.00
due on a decree in another case, that "subsequent to that I
did go over to Mr. Cornell's office, that very Monday, Tues-
day being the 4th of July and I saw Mr. Doyle and he said
something, that he would take the money and I said, 'You
wait here until I go and see Mr. Lindsay,' and I went over
to see Mr. Lindsay and Mr. Lindsay was not in his office,
and afterwards I did not see Mr. Lindsay, and I telephoned
then to Mr. Cornell's office and he said that Mr. Doyle had
gone and I knew how they had been acting toward me all the
previous years and I thought there was no use pursuing it
any further."    Mr. Shirk was mistaken about the day, as
Tuesday was not the fourth but the eighth of July.    That is
not important, but what we have quoted does not in any way
contradict Mr. Cornell as to what transpired the morning of
the day of sale, and Mr. Lindsay and Mr. Shirk were present
at the sale, Mr. Lindsay having testified that he was author-
ized by Mr. Tippett to bid for the property up to the sum of
$2,500.00.

A good part of the appellant's brief discusses the question of tender, in various phases, as he did at the argument. He cites authorities to show that a tender was not required because there was a waiver, by admitting that a tender would be fruitless, by declaring that it would not be accepted if a tender was made, that a waiver is good if more than is due is demanded, etc. The trouble is that the authorities are not applicable to the facts. There is not a particle of evidence to show that Mr. and Mrs. Doyle, the holders of the mortgage, ever agreed to assign it to the appellant, to Mr. Tippett or to any one else, and we have seen that Mr. Cornell was not shown to have authority to act for them, and, of course, could not assign the mortgage, or the decree. Mr. Doyle did agree the morning of the day of sale to assign the mortgage, upon payment of what we have stated above, and, so far as appears in the record, was still willing to do so after the sale, assuming, we suppose, that his wife would join in the assignment, as she probably would have done, but nothing was done by or for the appellant to carry out the arrangement then made. Mr. and Mrs. Doyle were certainly under no obligation to assign the mortgage before the money was paid, and there is no evidence of a tender, or anything being done which waived a tender, after what Mr. Doyle agreed to that morning. It would, therefore, be useless to discuss the authorities cited on that subject, and for the purposes of this case it may be conceded that they correctly state the law as to tender. The rule of the Circuit Court of Baltimore City on the subject is not in the record, but it is probably similar to those in some other circuits in this State, and as it was when the case of *Gustav Adolph Build. Assoc.* v. *Kratz,* 55 Md. 394, was decided. It was there held that one-half commissions and the costs should have been allowed, and in this case it was not even proposed to redeem the mortgage, but only to have it assigned. It is not shown, therefore, that the demand of Mr. Doyle was illegal or inequitable.

The appellant seems to assume that he had the absolute right to require the mortgagees to assign the mortgage to Mr. Tippett, upon payment or tender of the amount, costs, etc., but such is not the law in this State, in the absence of an agreement. The case of *Dircks* v. *Logsdon,* 59 Md. 173, referred to by the appellant, does not sustain his position. In that case the controversy was as to whether what the mortgagee had done amounted to a release, but there was no intimation in the opinion that Logsdon had any right to demand an assignment from Wilson, the mortgagee, although he did voluntarily assign the mortgage. Nor is there anything in *Parsons* v. *Urie,* 104 Md. 238; *Kent Building Co.* v. *Middleton,* 112 Md. 10, or *Wingert* v. *Brewer,* 116 Md. 518, holding that the owner of the equity of redemption, merely as such, can require the mortgagee to assign the mortgage. There may be circumstances where a Court of Equity will not regard a payment by one entitled to redeem as an extinguishment of the mortgage, as illustrated in the above cases, but, although it may be unreasonable and seem harsh to refuse to assign a mortgage to the holder of the equity or to a third party under some conditions, ordinarily a mortgagee is not required to assign a mortgage, although the one asking it may be entitled to redeem it. The question is fully considered in 1 *Jones on Mortgages,* Secs. 792 and 793, and 2 *Ibid.,* Secs, 1086, etc. In a note to the latter section the case of *Strasbaugh* v. *Dallam,* 93 Md. 712, is referred to, where it was held that the devisees of a farm which was subject to a mortgage "were, of course, entitled to pay off and extinguish the mortgage debt, but they could not compel him (appellant) to sell or assign it to any one." There may be some circumstances which will authorize a Court of Equity to compel an assignment, but the general rule is, as stated in 2 *Jones,* Sec. 1086, that "A mortgagee cannot be compelled to assign the mortgage upon receiving payment of it; he can only be required to release or discharge it." Again it is

there said: "In like manner when a junior mortgagee or other encumbrancer redeems from a prior mortgage, although he has no right to demand a written assignment of the mortgage, he has the right to have the mortgage delivered to him uncancelled, and this in equity is a complete assignment of it." That principle was followed in *Parsons* v. *Urie.* Sometimes it is necessary for the protection of a party paying the money to keep the mortgage alive, but in this State the right of a mortgagor to have an assignment has not been sustained to the extent that it has been in New York and some other states. Of course, we do not refer to a case where there was a contract to assign, and we have already shown that we did not think a previous contract was established, or any attempt made to carry out the one agreed to by Doyle on the morning of July 8th.

As we are satisfied that the evidence does not show an inadequacy of price, or anything done by the mortgagees, or the trustee, which prevented the property from bringing its full market value, or gave the appellant, or any one for him, the right to the mortgage or the decree, before the money was paid, and as there was no irregularity in the sale that could justify us in setting it aside, we must affirm the order ratifying it, and it becomes unnecessary to discuss other questions raised by the appellant. We will only add that if Mr. Tippett is still willing to help Mr. Shirk, as the record shows he was, he may yet save something of importance, if his own valuations of his properties are even approximately correct, and we hope he will, but his ability to pay his debts cannot reflect upon the questions before us, although there is a good deal in the record on that subject.

*Order affirmed, the appellant to pay the costs.*