CHEW, ET AL. *v.* DeVRIES, ET UX.

[No. 433, September Term, 1964.]

*Decided October 19, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*L. Robert Evans* for appellants.

*L. Franklin Gerber, Jr.,* with whom were *Charles E. Orth, Jr.* and *Orth, Orth & Gerber* on the brief, for appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal involves a somewhat unusual set of facts, and reaches us in a rather peculiar posture.

On August 14, 1959, the appellees were, and still are, the owners of a parcel of land consisting of about 121 acres, situate

in Baltimore County, Maryland. On that date, they executed and delivered to one S. I. Lapidus an option (Lapidus option) to purchase the subject property at a purchase price of $85,000. There are only two provisions in this option which require interpretation. They follow:

"Notice of election by the optionee, his successors or assigns to purchase the aforesaid property, shall be in writing and shall be given to the Optionors, their heirs, personal representatives, successors or assigns at any time within four (4) years of the date of this Option."

\* \* \*

"This Option shall not be revocable for a period of four years from the date hereof, and shall remain in force and effect thereafter until terminated by the Optionors. Such termination may be effected at any time after the expiration of the aforesaid four year period by the Optionors giving ninety days prior written notice to the Optionee of such termination; provided, however, that no right to terminate shall be exercised by the Optionors after the Optionee has elected to purchase the property herein described."

On July 11, 1961, the appellees executed another option for the same piece of land to William F. Chew (the Chew option), one of the appellants herein. (The other named appellant is a corporation which is wholly owned by Chew and the parties concede that Chew is the only real party in interest; hence Chew will be referred to as the appellant, and we will not refer further to the corporation, unless such a course seems desirable.) This option provided for a purchase price of $108,200 upon exercise. The parties concede that it was properly exercised by Chew on October 6 and 9, 1961, within a valid extension granted to him.

On October 10, 1961, Chew and his agents became aware of the Lapidus option which had been recorded among the Land Records prior to that time. The Chew option and extension were also recorded among said Land Records.

Chew's attorney on October 20, 1961, wrote the appellees'

attorney for a statement of the balance due under an outstanding mortgage, and also requested a release of the Lapidus option. He suggested a settlement date of October 27, 1961, therein. Appellees' attorney replied, enclosing a mortgage statement, but indicating that Lapidus would not release his option. On October 30, 1961, Chew's attorney replied that there was little point in scheduling settlement without such a release, and that Chew intended to file suit for damages.

On October 31, 1961, without the knowledge or consent of the appellees, Chew purchased the Lapidus option (having it assigned to his corporation) for a purchase price of $65,000. On August 15, 1963, the appellees wrote to Chew's corporation, attempting to terminate the Lapidus option. The corporation wrote back to appellees claiming 90 days in which to elect to exercise that option. Appellees replied on August 27, 1963, that the time for election had expired four years from the date of the option. On August 29 and again on November 6, 1963, the corporation notified appellees of an election to exercise the Lapidus option. This election was again resisted by the appellees.

The appellees agreed below that Chew was entitled to have settlement under the Chew option according to the terms thereof, but denied Chew's right to deduct the $65,000 paid for the Lapidus agreement. The appellant, in his bill of complaint, prayed the court to grant him specific performance of the contract resulting from the exercise of the Chew option, but requested an abatement of the $65,000 paid to Lapidus. Under this theory, the purchase price to the appellees would have been a net $43,200.

Appellant also requested alternative relief in that if the court refused his prayer mentioned just above, then the court allow him to exercise the Lapidus option and award him damages under the contract arising from the Chew option.

The appellant offered testimony by a real estate expert of conceded qualifications that the value of the land was $2,000 per acre at the time of Chew's purchase of the Lapidus agreement; his purpose being to attempt to establish that $65,000 was a reasonable purchase price for the Lapidus agreement.

Chew owned a 176 acre parcel of land contiguous with the subject parcel, and the Chew parcel had very limited ingress and

egress, which made the subject parcel of peculiar value to Chew.

There was testimony offered by the appellees (denied by testimony adduced by the appellant) that Lapidus had orally agreed with the appellees, prior to the execution by them of the Chew agreement, that he would release his option.

The Chancellor denied appellant's first prayer for relief, but granted his second in part. He held that when Chew exercised the Lapidus option, he abandoned his rights under the contract resulting from the exercise of the Chew option. He, therefore, decreed specific performance of the contract resulting from the Lapidus option, without damages allegedly resulting from the Chew option.

The appellant duly noted an appeal, but there was no cross-appeal by the appellees.

Thus, it is seen from the above facts and the posture in which the action reaches us that the question for our decision is whether the chancellor failed to grant the appellant any relief to which he was entitled. We think he did not.

It will not be necessary for us to consider all of the rights of the optionors and the optionee of the Lapidus option during the entire period from its execution until the attempted exercise thereof by the appellant. It was not exercised within four years from its date, but was exercised before ninety days' written notice of its termination by the optionors. We must, therefore, determine whether it was validly exercised in accordance with its terms. The Chancellor pointed out that the two excerpts, quoted above, were not so clear and precise, when considered in relation one to the other, as might be desired; but held that the two could and should be harmonized so as to give full effect to each. He did this by considering both provisions together and interpreting the second "shall" in the first excerpt as not being used in a compulsory or peremptory sense, but in a directory or permissible one. This was proper. The word "shall" has frequently been so construed by the courts on proper occasions. *In re Rickell's Estate,* 158 Md. 654, 659; *Delaware County Dairies v. White,* 75 N. Y. S. 2d 434; and see the cases collected in 39 *Words and Phrases* (Perm. ed), pp. 118, *et seq.*

There is a well-established rule of contractual construction that where two provisions of a contract are seemingly in con-

flict, they must, if possible, be construed to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design. *Lumber Co. v. Bldg. & Savings Assn.*, 176 Md. 403; *Sagner v. Glenangus Farms*, 234 Md. 156, 167; 17A C.J.S. *Contracts* § 309 (with a long line of decisions collected in n. 95) ; 17 Am. Jur. 2d *Contracts* § 267. And, if a reconciliation can be effected by a reasonable interpretation, such interpretation should be given to the apparently repugnant provisions, rather than nullify any. 17A C.J.S. *Contracts* § 309, n. 96; 17 Am. Jur. 2d *Contracts* § 267. The second excerpt flatly states: "This option shall not be revocable for a period of *four years from the date hereof,* and *shall remain* in force and effect *thereafter* [after the expiration of the four years] *until terminated* by the optionors. Such termination may be effected at any time *after* the expiration of the * * * four year period by the optionors giving ninety days prior written notice * * *." (Italics added.) This language, we think, clearly negates any significant probability that the second "shall" in the first excerpt was intended by the parties to have been used in its imperative or commanding sense. We therefore hold that the Chancellor was correct in holding that the Lapidus option was lawfully and effectively exercised by its assignee, the appellant herein.

Appellees challenge the effectiveness of the exercise of said option and base their attack upon several rules of contractual construction. We do not deem it necessary or desirable to consider each of these contentions separately. It will suffice to say that none was sufficient to alter what we have said above. In fact, there is a distinct possibility that appellees, after conceding that the Chew option had been validly exercised, would be in a less favorable position, financially, if they were successful in their challenge of the exercise of the Lapidus option. Appellant cited very persuasive authorities to the effect that if he were entitled to specific performance of the contract resulting from the exercise of the Chew option, he would be entitled to an abatement for any deficiency in the quality of appellees' title. *Wingert v. Brewer,* 116 Md. 518; *Brewer v. Sowers,* 118 Md. 681 (a related case) ; *Ferrell v. Bork,* 79 A. 897

(N. J.), (vendor only had a ¾ interest in land sold); *Brisbane v. Sullivan,* 93 A. 705 (N. J.), (outstanding life interest); 49 Am. Jur. *Specific Performance* § 105; 81 C.J.S. *Specific Performance* § 162. Hence, if the optionee under the Chew option were entitled to specific performance with an abatement of $65,000, the net purchase price to appellees would be $43,200 ($108,200 less $65,000); whereas, under the decree of the Chancellor, they obtain $85,000 (of course, the decree provides for the payment by appellees of the outstanding mortgage and other encumbrances, if any). However, a determination of the above question is not necessary for a decision of the case; consequently, we leave the question open.

Having determined that the Lapidus option was validly exercised, we must consider and decide what effect its exercise had upon the rights and obligations of the parties to the contract resulting from the exercise of the Chew option. The Chancellor held that the appellant in exercising the Lapidus option abandoned his rights under the latter contract, and again we agree with his conclusion.

If Chew, as the purchaser of the land under his exercised option, had a right to purchase the Lapidus option (as being a burden on appellees' title) and charge the fair market value thereof, as an abatement, against the purchase price agreed to be paid to the appellees, certainly that right extended no further than the right to purchase it for the purpose of preventing the exercise thereof by its holder, which would have protected Chew's rights under his contract. Surely, he could not utilize appellees' funds to purchase an opportunity to obtain for himself a more favorable purchase price as against the appellees, which he, apparently, thought he was doing. Had he merely purchased the Lapidus option and sued for the specific performance of his contract with the appellees, praying an abatement for the fair market value of the Lapidus option, a very different question than the one now being considered would have arisen. However, Chew did not do this, but decided to exercise the Lapidus option, as its assignee, thereby expecting to exact his full "pound of flesh." (It will be remembered that the Chew option was exercised on October 6 and 9, 1961; the Lapidus

option was not exercised until the latter part of 1963.) The results from this action on Chew's part are important.

2 Restatement, *Contracts* § 381 Comment d states:

> "A choice between remedies for an injury must be distinguished from a choice between substantive rights and privileges. * * * [citing several illustrations]. These are choices between substantive legal relations, between contract and no contract. The relation that is chosen is created by a mere manifestation of assent."

When Chew chose to utilize the Lapidus option in 1963, he made a permissible election as to substantive rights and legal relations between him and the appellees. He made a lawful and valid subsequent contract to that arising as a result of the Chew option between himself (as assignee of the Lapidus agreement) and the appellees for the same subject property. It would serve no helpful purpose to set forth the two option agreements in detail. It has already been pointed out that the respective purchase prices differed substantially. In addition, the considerations given by the optionees were entirely different, and the modes and times of exercising the options were inconsistent. In other words, Chew's action in exercising the Lapidus option created a new and subsequent contract to that arising from the Chew option, which completely covered the subject-matter of the last named contract and contained terms so inconsistent therewith that the two could not stand together. When this occurs, the authorities seem to be in complete accord that the later contract "rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject." Quoted portion of last sentence taken from *Housekeeper Pub. Co. v. Swift*, 97 F. 290 (C.A. 8). See also *Howard v. Wilmington etc., R. R. Co.*, 1 Gill (Md.) 311, 340; *Hercules Powder Co. v. Campbell Sons Co.*, 156 Md. 346; *William Danzer & Co. v. Western Md. Ry. Co.*, 164 Md. 448, 459; 6 *Williston, Contracts* (Rev. ed.) § 1826 (with many cases collected under n. 9). Cf. *Swift v. Allan*, 211 Md. 588; 2 Rest. *Contracts* § 408; 6 *Corbin, Contracts* § 1296. We hold that when Chew elected to exercise the Lapidus option, he abandoned and repudiated his rights under his contract resulting from the Chew op-

tion; consequently, he was not entitled to recover, under the circumstances here involved, damages allegedly resulting from the first contract.

What we have said above makes it unnecessary to answer any other questions raised by the appellees, who did not cross-appeal.

*Decree affirmed, appellants to pay the costs.*