### STORAGE TECHNOLOGY CORPORATION

v.

### CCL SERVICE CORPORATION, et al.

### Civil Action No. DKC 98–4235.

United States District Court, D. Maryland.

April 18, 2000.

Victor G. Klingelhofer, Cohen Mohr, Mc-Lean, VA, for Storage Technology Corp.

Ronald L. Spahn, Spahn, Harvis, Greenberg & Broida, Columbia, MD, for CCL Service Corp., CCL, Inc.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiff Storage Technology Corporation ("StorageTek") brings this suit against CCL Service Corporation ("CCL Service") and CCL, Inc. for breach of contract. Pending before the court are cross-motions for summary judgment on the issue of liability. The matter is fully briefed, and the court now rules pursuant to Local Rule 105.6. For the reasons stated more fully below, the court will grant in part and deny in part each of the motions, finding that Defendants were in breach of the Teaming Agreement, but only from January 1, 1999, to June 30, 1999.

### I. Background

Plaintiff StorageTek is a Delaware corporation with its principal offices in Louisville, Colorado, which manufactures storage devices for computer equipment. Defendants CCL, Inc. and CCL Service are Maryland corporations with principal offices in Bethesda, Maryland. CCL, Inc.'s principal business is leasing and selling mainframe computer systems. CCL Service maintains and repairs computer equipment. CCL, Inc., founded in 1984, and CCL Service, founded in 1995, share the same officers, Henry Seta and his wife Ann.

In 1993, CCL, Inc. successfully bid upon a multi-million dollar contract with the federal government to provide maintenance service to the computer systems of the Defense Information Services Agency. Contract No. DCA600–94–D–0001 (the "Prime Contract") began performance on January 1, 1994. According to the 210-page document, the "base contract period" was one calendar year. However, the contract included two option clauses. The first allowed for a subsequent six month extension in the event of a bid protest, and

the second allowed for four one-year extensions in the ordinary course of performance:

I.86  52.217–8 OPTION TO EXTEND SERVICES (AUG 1989)[1]

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the contractor within the period specified in the schedule.

(End of clause)

I.87  52.217–9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 1989)

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months.

(End of clause)

Plaintiff's Motion for Summary Judgment at Exhibit 3.

CCL, Inc.'s strategy in bidding for the Prime Contract had been to promise maintenance by original equipment manufacturers. Accordingly, in August 1994, StorageTek and CCL, Inc. agreed to a subcontract (the "Teaming Agreement") requiring StorageTek to maintain Storage-Tek equipment covered under the Prime Contract. The Teaming Agreement included the following provisions with respect to the scope of the agreement:

CCL will not team with another vendor to fulfill the requirements to which StorageTek has responded to CCL under Prime Contract No. DCA600–94–D–0001, specifically the maintenance of StorageTek products. In the event that a contract modification is made by the Government to CCL for StorageTek services under Prime Contract No. DCA600–94–D–0001, CCL shall use only StorageTek services to maintain the StorageTek products under the contract requirements for the entire period the StorageTek products remain under the Prime Contract No. DCA600–94–D–0001. For that reason, CCL will be liable in direct damages sustained by StorageTek for any assistance or cooperation given to any competitor for the requirements which StorageTek has responded to CCL regarding the Prime Contract No. DCA600–94–D–0001 . . . .

This Teaming Agreement shall terminate upon occurrence of the following:

1.  cancellation of the prime contract;

2.  modification of the prime contract resulting in deletion of the requirements for which the StorageTek supplies or services in Exhibit A and paragraph 6 were proposed;

3.  expiration of the prime contract life period, subject to extension by mutual agreement.

. . . CCL agrees that any StorageTek products which the Government places on the Prime Contract No. DCA600–94–D–0001 will be maintained only by StorageTek for the entire period products are covered under the prime contract.

*Id.* at Exhibit 6.

Pursuant to the 52.217–9 option, the government extended the term of the contract on four occasions for an additional one-year term. In the fall of 1998, the

---

1.  The dates stated are the effective dates of the regulations which set out the model language for the option clauses. *See* 48 C.F.R. §§ 52.217–8, 52.217–9.

government issued a new solicitation for a computer maintenance contract. The solicitation included the work covered at that time under the Prime Contract. CCL Service placed a bid, but the government awarded the new procurement to CHE Consulting, Inc. CCL Service immediately filed a bid protest in the Court of Federal Claims. *See CCL Serv. Corp. v. United States*, 43 Fed. Cl. 680 (1999). In light of the dispute surrounding the solicitation, the government eventually terminated the CHE contract and instead decided to extend services under the 52.217–8 clause of the Prime Contract while soliciting new bids.

Before issuing the extension of services, the government renegotiated the prices of the Prime Contract with CCL, Inc. and issued Modification No. 147 incorporating new prices. Plaintiff's Motion for Summary Judgment at Exhibit 10 ("In the event the Government decides to extend the contract beyond 31 Dec 1998, the following contract line item number (CLIN) prices shall apply (see Attachment A)."). On December 23, 1998, the government extended the services under the contract with the issuance of Modification No. 148, which stated: "The Government hereby extends services under the contract, including all modifications thereto, for the period 1 Jan 1999 through 31 March 1999, pursuant to Section I contract clause FAR 52.217–8, Option to Extend Services (Aug 1989)." *Id.* at Exhibit 11. At the end of March, the government issued yet another modification, No. 159, stating that "The Government hereby extends services under the contract, including all modifications thereto, for the period 1 Apr 1999 through 31 Oct 1999." *Id.* at Exhibit 12. This modification did not contain a reference to any option clause within the Prime Contract although it was again issued as an expressed modification to the Prime Contract.

Meanwhile, on December 14, 1998, CCL Service sent a letter to StorageTek stating that CCL Service planned to transfer StorageTek's work under the Prime Contract to a new subcontractor after December 31, 1998. Plaintiff filed this suit on December 30, 1998. On January 1, 1999, CCL Service began to use Amdahl Federal Services for the maintenance of StorageTek equipment during the extension of the Prime Contract.

## II. Discussion

The issue before the court is whether the Teaming Agreement applied to the services required in 1999 under Modification Nos. 148 and 159 to the Prime Contract. Plaintiff argues that the modifications extended the life of the Prime Contract and thus the life of the Teaming Agreement. Defendants argue that the Prime Contract, and in turn the Teaming Agreement, terminated at the end of 1998.

It is well settled that the construction of a written contract is ordinarily considered to be an issue of law for resolution by a trial judge. *University Nat'l Bank v. Wolfe*, 279 Md. 512, 369 A.2d 570, 576 n. 7 (1977). Maryland follows the objective theory of contract law. *Aetna Casualty & Surety Co. v. Insurance Comm'r*, 293 Md. 409, 445 A.2d 14, 19 (1982). "A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 492 A.2d 1306, 1310 (1985). Where the language of the agreement is clear and unambiguous, the court must presume the parties meant what they expressed in writing. *Id.*

Defendants argue that their actions do not constitute a breach of the Teaming Agreement because the Teaming Agreement expired on December 31, 1998. Defendants rely upon ¶ 7.3 of the agreement which calls for termination upon "expiration of the prime contract life period, subject to extension by mutual agreement." Therefore, the court faces the narrow issue of whether the Prime Contract's "life peri-

od" had expired as of January 1, 1999. The court finds that in fact the Prime Contract did not expire on December 31, 1998, because the government exercised its option under 52.217–8 to extend the life period of the contract.

■ The extension of services after December 31, 1998 was contemplated in the original contract. The Prime Contract adopts the language of 48 C.F.R. § 52.217–8, allowing the government "to require continued performance of any services within the limits and at the rates specified in the contract" for up to six months. Another federal acquisition regulation explains the purpose of this option clause:

Award of contracts for recurring and continuing service requirements are often delayed due to circumstances beyond the control of the contracting offices. Examples of circumstances causing such delays are bid protests and alleges mistakes in bid. In order to avoid negotiation of short extensions to existing contracts, the contracting officer may include an option clause (see 17.208(f)) in solicitations and contracts which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract. However, these rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance thereunder shall not exceed 6 months.

48 C.F.R. § 37.111. Both parties reviewed the Prime Contract when they entered into the Teaming Agreement, and therefore the court must assume that they were aware of the possibility of the 52.217–8 extension. *See Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc.,* 983 F.Supp. 640, 646 (D.Md.1997) ("one who signs a contract without first reading it to ascertain its contents cannot avoid the contract's effect by pleading ignorance").

■ Defendants point to the language of 52.217–9, the option clause providing four one-year extensions, to argue that the contract expired on December 31, 1998: "The total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months." The court agrees that at first blush this clause would support an expiration date of December 31, 1998 and exclude the possibility of a 52.217–8 extension after 60 months. However, a contract must be read as a whole in construing various provisions. *Goodman v. Resolution Trust Corp.,* 7 F.3d 1123, 1127 (4th Cir.1993). When read in conjunction with the purpose and language of 52.217–8, the contract duration stated in 52.217–9 clearly does not include any extensions possible under 52.217–8. The exclusion of the term of any 52.217–8 option from 52.217–9 makes sense in light of the fact that the Office of Federal Acquisition and Regulatory Policy drafted the language of 48 C.F.R. § 52.217–9 before 48 C.F.R. § 52.217–8 existed and therefore could not have known to incorporate a reference to it.

Defendants' interpretation of these two clauses cannot be reconciled with the purpose set forth by 48 C.F.R. § 37.111, to allow the government to continue receiving services in the face of the all-too-common bid protest. Under Defendants' logic, the government may only exercise the extension of services option of 52.217–8 where a bid protest occurs after a term of less than 60 months. Where the government extends the contract to the full 60 months and then suffers a bid protest to the next solicitation, the government would be left with no recourse. Therefore, the court rejects Defendants' argument that the language of 52.217–9 precludes an extension under 52.217–8 beyond 60 months and finds that the "total duration of the contract" stated in 52.217–9 excludes the option available under 52.217–8. *See Chew v. Devries,* 240 Md. 216, 213 A.2d 742 (1965) ("Where two provisions of a contract are seemingly in conflict they must if possible be construed to effectuate intention of parties as collected from whole instrument, subject matter of agreement, circum-

stances surrounding its execution, and its purpose and design, and if possible, rather than nullify any provision, a reconciliation must be effected reasonable interpretation."); *see also Akal Sec., Inc.,* 91–2 CPD P ¶336, at 5, 1991 WL 222408 (1991) (52.217–8 provides for a six month extension beyond the contract life period stated in another clause of the contract); *Crawford Technical Serv., Inc.,* 93–3 BCA (CCH) ¶26,136, at 129,914, 1993 WL 190352 (1993) (duration of contract under 52.217–9 is subject to the option to extend services provision).

■ Finally, Defendants argue that the extension of services under 52.217–8 is not an extension of the contract, but merely an extension of services after expiration of the contract that constitutes a new contract. This court disagrees. The Court of Claims has previously found that the use of an option to extend services in a bid protest situation is an appropriate extension of the original contract. *Unified Indus., Inc. v. United States,* 24 Cl.Ct. 570, 574–75 (1991). The extensions under 52.217–8 were made through modifications to the Prime Contract. The government's documents indicate that the extension of services extended the life period of the Prime Contract beyond the original 60 months by still using the same contract number and order of modification numbers. "To call an option to an original contract a second contract, the option must

be 'the only (or at least the principal) subject matter of the bargain.' ... Conversely, if the option 'never constitutes the chief object of desire' for which the contract was negotiated, the option is not a second contract. This type of contract provision is merely incidental to, and is not separable from, the original contract." *Ocean Technology, Inc. v. United States,* 19 Cl.Ct. 288, 291–92 (1990) (citing 1A Corbin on Contracts § 259, at 464 (1963)). Therefore, the court will grant summary judgment in favor of Plaintiff with respect to the extension of the contract for six months beyond the 60 months.[2]

■ However, the extension of services beyond 66 months was not contemplated by the original Prime Contract or, by incorporation, the Teaming Agreement. The parties could not have intended the Teaming Agreement to survive beyond 66 months because that was the expressed maximum length of the Prime Contract. The court finds then that the Teaming Agreement is limited by the original scope of the Prime Contract. Therefore, Defendants were only obligated to Plaintiff under the Teaming Agreement for six months of 1999, or until June 30, 1999.

### III. Conclusion

For the foregoing reasons, the court finds that Defendants were in breach of the Teaming Agreement from January 1, 1999, to June 30, 1999.[3] The parties' most

**2.** Defendants' argument that damages under the Teaming Agreement are limited to "directed damages sustained by StorageTek for any assistance or cooperation given to any competitor" is unavailing. That statement merely points out an example of actions that would be in breach of the contract.

**3.** Defendant CCL Service argues that the court should dismiss it from this suit because the sole parties to both the Prime Contract and the Teaming Agreement were Plaintiff StorageTek and Defendant CCL, Inc. However, at the time of the signing of both the Prime Contract and the Teaming Agreement, CCL Service did not exist. Subsequent modifications to the Prime Contract all list CCL, Inc. as the contractor. Plaintiff's Motion for Summary Judgment at Exhibit 10, 11. However,

according to Defendants, after CCL Service came into existence, it began to perform at least some, if not all, of the work under the Prime Contract. *Id.* at Exhibit 2 at 23 (Defendants' Seta testifies that employees from both corporations work on the Prime Contract), 9 (letter from CCL Service to Plaintiff terminating the Teaming Agreement), 33 (Defendant CCL, Inc. responds in interrogatories that all work after 1995 under the Prime Contract was performed by CCL Service). Because Defendants have not provided to the court adequate evidence or information regarding the assignment of duties from CCL, Inc. to CCL Service, the court cannot at this time resolve the liability of Defendant CCL Service. Therefore, the motion to dismiss Defendant CCL Service on this ground will be denied.

recent status report indicates that settlement is possible after resolution of these motions. Therefore, the court will await notice from the parties as to whether referral to a magistrate judge for a settlement conference or a scheduling order for resolution of the issue of damages is an appropriate course.