CASO 32.—ACTION BY HECHT & CO. AGAINST THE AMERICAN CREDIT INDEMNITY COMPANY OF NEW YORK.—February 24, 1910.

## American Credit Indemnity Co., N. Y., v. Hecht & Co.

Appeal from McCracken Circuit Court.

W. M. REED, Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Insurance—Contracts.—An insurance agent had power to make contracts for credit insurance and issued a policy expiring May 1, 1906. The bond provided that if insured should take out a renewal policy, and pay the premium before the expiration of the policy, losses during the term of the new bond on goods sold within the preceding 12 months should be covered thereby. At the expiration of the first bond, the insured was away from home, but on May 11th agreed to take a bond, provided it covered the back sales under the old bond and the agent accepted the new bond taking a note for the premium, both note and policy being dated May 1, 1907, thus continuing the old bond in force. Held that, where the company did not repudiate the policy nor the note given for the premium, losses occurring during the term of the renewal on goods delivered within the preceding 12 months were covered by the renewal policy.

2. Insurance—Authority of Agents—Contract Provisions.—A policy provision that no agent of the company shall have power to waive or alter any of its provisions may be waived by the company and was waived by its failure to repudiate the act of its agent in postdating a policy so as to create continuous insurance.

3.  Contracts—Postdating Agreement.—As between the parties
    to a contract, it is no objection that it was postdated, but
    they will be bound by the agreement as made.
4.  Insurance—Credit   Insurance—Proof . of    Loss—Waiver.—
    Where a credit insurance company denied liability on the
    ground that the policy had been postdated, and so issued
    as to create continuous insurance, but made no complaint
    as to the sufficiency of the proofs of loss submitted, it
    could not thereafter on the trial object that the proofs of
    loss were insufficient.

JOS. R. GROGAN, J. D. MOCQUOT and. DAVID GOLDSMITH
for appellant.

C. C. GRASSHAM and WHEELER, HUGHES & BERRY for ap-
pellees.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Hecht & Co. are merchants doing business in Paducah. The Credit Indemnity Company issued to Hecht & Co. a bond in May, 1905, by which it agreed to indemnify them against actual loss not exceeding $5,000 resulting from the insolvency of debtors as thereby defined occurring during the time of the bond on the actual sales, shipments, and deliveries made by them of merchandise dealt in and entirely owned by them, between the 2d day of May, 1905, and the 1st day of May, 1906. The bond also contained the following clause: "In case the company shall issue to the indemnified a new bond at or before the date of the expiration hereof, and the indemnified shall pay the premium on the new bond at or before said date, then losses occurring during the term of said new bond on goods sold and delivered within the twelve (12) months next preceding the expiration of this bond shall be covered by, and may be proven under, the new bond to the same extent and in the same manner, and subject to the same limitations and provisions, as losses on goods sold and delivered by the indemnified during the term of the new bond,

and in such case the rating of the debtor at the date of each shipment shall apply."

By another bond, dated March 22, 1906, the indemnity company agreed in like manner to indemnify Hecht & Co. during the term from May 2, 1906, to May 1, 1907. On December 30, 1907, Hecht & Co. brought this suit on the second bond to recover for certain losses on goods shipped and delivered during the term of the previous bond. The indemnity company denied liability for those losses on the ground that although the second bond is dated March 22, 1906, the renewal was not in fact made until May 11th, and it is claimed that therefore the indemnity company was not liable for any sales made before May 1, 1906. The proof shows that before the expiration of the first bond, Mr. Boardman, the agent of the indemnity company came to Paducah, seeking a renewal of the bond, but Mr. Hecht was away from home. He returned on May 11th, and Hecht then agreed to take the bond provided it covered the back sales under the old bond. Boardman said that he would accept a new bond under this condition covering the back sales, and would take a note for the premium, $375, dating it back to May 1, 1906, and that thus it would continue the old bond in force. The note was given as he suggested and was afterwards paid. The bond was delivered and was dated back to March 22d. Who dated the policy back does not appear; but presumably Boardman had the policy with him, for the whole arrangement seems to have been consummated there that day between him and Hecht. Hecht suggested to Boardman to put a rider on the policy showing these facts, but Boardman said that was unnecessary that dating the note back would cover the losses under the old bond. There

is no dispute that the renewal of the note was obtained in this way, and that the premium was paid upon this assurance of Boardman. But it is insisted that Boardman had no authority to make the arrangement. The circuit court entered judgment against the company and it appeals.

No limitations are shown upon Boardman's authority as agent. So far as appears he was a general agent of the company with power to make contracts of insurance. The company does not assail the validity of the policy itself, and there is no explanation of its being dated March 22, 1906, except that above stated. In Phoenix Insurance Company v. Spiers and Thomas, 87 Ky. 297, 8 S. W. 458 (10 Ky. Law Rep. 254), the court said: "The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. The maxim, qui facit per alium facit per se, should apply with peculiar force to the acts of an insurance agent. He usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him. He is generally regarded as having full power in reference to it. Being usually the only man upon the ground having anything to do with it, the persons insured in his company, with few, if any exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative, and any notice to him as to it as sufficient. They rarely know anything of the company or of its officers, who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative

of the company in everything connected with that insurance. If they did not consider that they were authorized to do so, it would undoubtedly create distrust and cripple the business. As to third parties, the agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public."

The rule announced in this case was followed in Wright v. N. Y. Life Ins. Co., 91 Ky. 208, 15 S. W. 242, 12 Ky. Law Rep. 850; London, etc., Ins. Co. v. Gerteisen, 106 Ky. 815, 51 S. W. 617, 21 Ky. Law Rep. 471; Mudd v. German Ins. Co., 56 S. W. 977, 22 Ky. Law Rep. 308; Aetna Life Ins. Co. v. Hartley, 67 S. W. 19, 68 S. W. 1081, 24 Ky. Law Rep. 57; Continental Ins. Co. v. Browning, 114 Ky. 183, 70 S. W. 660, 24 Ky. Law Rep. 992; Mattingly v. Springfield, etc., 120 Ky. 768, 83 S. W. 577, 26 Ky. Law Rep. 1187. It is a sound rule that where one of two innocent parties must suffer the loss should fall on him who sent out the agent, and clothed him with apparent authority to do what he did. Boardman made a contract of insurance with Hecht & Co.; he dated back the papers so that it would appear that the second contract was made before the first ran out; he assured Hecht that this would protect him, and thus secured from Hecht the continuance of his business, and the payment of the premium. It is true in this suit the company offered to refund the premium which had been paid, but that would not put the parties in statu quo; for Hecht might have obtained other insurance if he had not gotten this from Boardman, and under the rule which was laid down in the cases cited, and a number of others following them, the company was properly held liable.

It is earnestly insisted that the policy provides that no agent of the company shall have power to

waive or alter any of its provisions. But the company could waive this provision as it could any other provision in it. The act of Boardman in making the contract of insurance was its act. It kept the note. It either issued the policy dated March 22d, or delivered it to Boardman to fill out. In either case it is bound by the contract. The loss is covered by the terms of the bond, as upon the face of the papers the second bond was in effect before the first expired. The defense of the company in fact assails what appears on the face of the papers. In a matter like this between two individuals, they may, by agreement, date a contract back and they will be bound by the agreement thus made. A corporation, no less than an individual, may make a like agreement. If the president of the company had made the agreement here with Hecht, it would hardly be urged that the company was not bound. But it is equally bound by the acts of Boardman within the scope of his apparent authority. It can not well be disputed that as Hecht contracted for a year's insurance and paid the premium for a year, the company is liable on the sales made between May 2d and May 11th, although the contract was not in fact made by Boardman until May 11th. It must be equally liable for the sales made under the old bond for the act of Boardman was no less the act of the company as to these sales than as to those made after May 2d and before May 11th. When Hecht & Co. did not renew their bond before May 2d, the company had the privilege to be quit of its obligation, but this it could waive; and when it afterwards agreed to do this, and dated the papers back in evidence of the agreement, it is estopped, after enjoying the fruits of the contract to deny its liability when a loss has ensued. New Eng.,

etc., Ins. Co. v. Springgate, 129 Ky. 628, 112 S. W. 681, 113 S. W. 824.

The policy provided that Hecht & Co., should bear an initial loss of not less than $2,000, and the guaranty was only for the losses over and above that sum. In defining insolvency it provided among other things that the debtor should be deemed insolvent when a petition in bankruptcy was filed by him under the laws of the United States, or when he made a general assignment for the benefit of his creditors. It is earnestly insisted here that the proof on the trial does not show that the losses were from insolvency as thus defined. In the exhibit filed with the petition giving the list of the debtors who had failed, their residence, rating, nature of insolvency, etc., under the head of nature or insolvency, in some cases, this is given, "bankruptcy"; in other cases, this, "assignment."

It is insisted that this does not show that a petition in bankruptcy was filed by or against the debtor, or that he made a general assignment for the benefit of his creditors. But it appears from the proof that as each of these men failed, notice of the failure was promptly given to the indemnity company by Hecht & Co. as required by the policy, and that at the end of the term proofs of loss were submitted as required by it. The company then denied liability on the ground first above referred to. No complaint was made as to the sufficiency of the proofs of loss. Under such circumstances, as we have often held, the company cannot now complain that the proofs of loss were insufficient. No proof was offered by it on the trial, and we think it should now be assumed that all these facts were shown by the proofs of loss, in view of the pleadings in the case

which plainly show that the case was tried in the circuit court upon the question of the liability of the company under the policy.   The undisputed proof in the record is that all these facts were shown by the proofs of loss furnished to the defendant, and with this proof in, the defendant did not produce the proofs of loss, or in any way negative the evidence.   It is the duty of this court at any stage of the proceeding to disregard errors not affecting the substantial rights of the party complaining, and in view of all the facts, we are satisfied the ends of justice do not warrant a reversal for the matter complained of in regard to the proofs of the claim.

Judgment affirmed.

OPINION BY JUDGE O'REAR ON PETITION FOR REHEARING.—June 17, 1910.

Appellant contends that the court has announced a rule concerning the effect of furnishing proofs of loss which is in conflict with an adjudged case from this court, as well as against the current authority elsewhere on the subject.   The parties had stipulated in their contract of insurance what the effect of the furnishing the proofs of loss was to be.   It is complained that the court has attributed to the failure of the insurer to deny the sufficiency of the proofs of loss as a notice under the contract that a claim of loss under the policy would be asserted, an act of admission that the loss had in fact occurred, whereas the stipulation in the insurance contract was that it should not have such effect.   But the court did not announce such a rule of construction.   What we said was that, in view of the state of pleading in the case, further proof of the fact of loss was not required.

The petition exhibits a list of debtors of the plaintiff (the insured) who it was alleged had become insolvent by proceeding in bankruptcy, or who had made deeds of assignment. The answer failed to properly deny that the parties became insolvent by having passed into bankruptcy, or by having made deeds of assignment. The answer undertakes to deny upon lack of knowledge or information that "the losses alleged in the petition have been sustained by the plaintiff, or any thereof have been in fact sustained, through the insolvency of debtors as defined in the said policy or bond." This is not a denial that the persons charged as having been insolvent were in fact insolvent, had assigned, or were in bankruptcy. To have presented that issue of fact, a specific denial as to each of the debtors named should have been made. As it was not, we regarded the charge in the petition as to the fact of insolvency as admitted. Proof of that fact was not necessary in that state of the pleadings.

Petition for rehearing overruled.