# CANARAS *v.* LIFT TRUCK SERVICES, INC.

[No. 256, September Term, 1973.]

*Decided August 1, 1974.*

338

The cause was argued before Murphy, C. J., and Singley, Smith, Digges, Levine, Eldridge and O'Donnell, JJ.

*Marvin I. Singer* for appellant.

*Samuel S. Schenker*, with whom were *Samuel Blibaum* and *Fine & Klauber* on the brief, for appellee.

O'Donnell, J., delivered the opinion of the Court.

The appellant, George T. Canaras (Canaras), a Maryland attorney in the full-time employ of the Social Security Administration, brought suit in the Circuit Court for Baltimore County against Lift Truck Services, Inc. (Lift Truck) for breach of a contract of employment whereunder he was to render to Lift Truck services "as a member of its board of directors, as a consultant to the general manager and as an arbitrator", as well as other part-time professional services and advice. Disappointed that the trial court (Raine, J.), following a non-jury trial, entered a judgment in his favor, for $2,200.00 instead of the $41,448.84 [1] he claimed, Canaras asks us to reverse. We decline to do so.

---

1. An affidavit attached to his unsuccessful motion for summary judgment alleged total net wages for an 11-year period ending November 30, 1982, of $37,880.76, plus an "estimated ten percent ($3,788.08)" withheld income and Social Security taxes, for a total of $41,668.84 — less a credit for $220.00 for one month's payment and the "pay roll taxes" thereon of $20.00. Upon renewal the contract had a "built-in" seven percent annual compensation increment.

Beginning in about 1965, when Canaras prepared the incorporation documents, he had from time to time performed part-time legal services for Lift Truck, had "offered business guidance", participated in meetings, assisted in obtaining a franchise, drafted agreements, had discussed a pension plan, handled some collection matters, and had, in at least one tort litigation, engaged as co-counsel with insurance counsel. For such services he was paid on a per hour basis, except in collection cases where his compensation was a percentage of the recovery.

Lift Truck is a small closely held corporation specializing, as its name connotes, in the servicing and repair of material-handling vehicles. The principals, Messrs. Kenneth M. Gent, president, Frank J. Szumlanski, vice president, and William K. Hufham, Sr., secretary-treasurer, were not only its stockholders, but constituted as well the board of directors. Each possessed mechanical and technical expertise, but was generally unskilled in business management. In mid-1971, wishing to devote themselves exclusively to the technical aspects of the operation, they discussed the employment of a general manager to run its day to day business operations. The principals had decided upon Leroy W. Applegate, then the sales manager of Lift Truck, to be promoted to general manager.[2] Canaras testified that such discussions also involved his retention as a consultant to such a general manager and as an arbiter of any potential rifts between the general manager and the principals of Lift Truck.

On his own initiative, at a meeting held on December 1, 1971, Canaras submitted to the principals two proposed contracts of employment — each pre-dated December 1, 1971 — one formalizing the employment of Applegate as general manager and the other proposing his employment. Canaras' contract basically proposed that he be employed on a one year basis, from December 1, 1971 to December 1, 1972, at a net salary of $200.00 per month, for services not to

---

2. Applegate later became a stockholder by virtue of an "option" in his employment agreement.

exceed eight hours per month. Included in the proffered agreement was a provision for its renewal, as set forth in Paragraph Ninth, which has here become the principal source of contention. That paragraph reads as follows:

"Ninth: The Employer shall have the option to renew this agreement and to extend Employee's employment upon the same terms and provisions as are contained herein for one additional period of Five years (5) years; such renewal shall take effect automatically unless the Employer shall give to the Employee written notice of its election not to renew this contract at least nine full months prior to November 1, 1972. This contract shall then automatically be renewed for another additional five year period unless the Employee shall notify the Employer of his election not to renew this contract, such notice to be given nine months prior to November 1, 1977."

Canaras submitted at the same time, similarly pre-dated as December 1, 1971, proposed minutes of a board of directors meeting and of a special meeting of the stockholders — (not yet held) — undertaking to record the execution of a contract with a management consultant (himself) and the execution of a contract with a general manager, as well as his election to the board of directors.

The evidence is uncontradicted that at that meeting on December 1, 1971, the proposed contracts were submitted, read and discussed, but the officers and directors refused to accept the contract for Canaras' employment. Hufham stated that he "wanted to consult his attorney" to have him inspect the Canaras proposal, and his attorney advised against execution of the contract; Szumlanski was "concerned about the cost", the "financial burden" to be assumed by Lift Truck under such a contract. The officers and directors at that meeting advised Canaras that the documents were not acceptable and they would not sign them. Not to be thwarted, however, by such lack of enthusiasm on the part of the principals for his employment,

Canaras — apparently by his persistence — resubmitted the contract proposals at meetings of the board held on December 9, 1971, April 12, and May 4, 1972, at each of which, after similar discussions, the board equally rejected their execution. Within the interval David Monoker, the accountant for Lift Truck, who was also an attorney, reviewed the Canaras proposal and similarly advised the board not to execute it.

At a meeting of the stockholders and of the board on May 18, 1972, each of the principals was present as were Applegate, Monoker and Canaras. At that meeting Applegate's contract as general manager was executed even though he had been serving in that capacity since December 1971. He testified that he never requested such a contract, did not believe that he needed a written contract of employment, that the subject matter had been initiated by Canaras and that he had executed the contract "at the request of the directors." While Applegate's contract was being discussed Canaras requested that he leave the meeting; Monoker left as well. The Canaras contract which had been drafted on his initiative and which was originally presented by him at the meeting of December 1, 1971 — and had been regularly thereafter rejected — came to be executed. The evidence was undisputed that no signing of either of the contracts, nor of the minutes — although dated December 1, 1971 — occurred until May 18, 1972.

Messrs. Gent, Szumlanski and Hufham — all called as witnesses by Canaras — each testified that they had no intention of executing Canaras' employment contract, had no recollection of having so executed it, intended only to execute Applegate's contract and the minutes of the meeting; that all the papers had been submitted together and could only explain the execution of the Canaras contract by concluding that it was "part of the bunch of papers" submitted to them for signature by Canaras whom they trusted as their attorney.

Notwithstanding these protestations, Gent, the president, acknowledged the authenticity of his signature on the Canaras contract, as did Hufham, a witness to both

signatures; all identified their signatures to the stockholders' minutes and Hufham acknowledged the genuineness of his signature to the minutes of the board of directors meeting.

At lunch time, on June 13, 1972, Canaras visited the office of Lift Truck; he advised the bookkeeper-office manager that he was then "on the pay roll" — although she had received no information from anyone placing him in that status — and he directed that she prepare a check for him in the net amount of $200.00.[3] The check was hand carried to Gent and Hufham who were at work in the service area of the shop and was jointly signed by them. When the matter was discussed that very afternoon with the principals she was instructed by Applegate to transfer the Canaras payment from the pay roll account and record it as "payment for legal services." On July 6, 1972, Canaras had turned over a check from a collection matter and simultaneously had received his $170.00 percentage fee for such work. After several unsuccessful attempts to locate Canaras he was advised by Monoker, on or about August 1, 1972, that his services were no longer required; his request for a salary check for July was not honored and he was formally thereafter requested to return all books and records.

The trial court, although finding that there was a confidential attorney-client relationship between Canaras and Lift Truck, found no evidence of fraud. The court further found that the principals, whom he described as "high grade mechanics" and who impressed him as being "extraordinarily obtuse", could not be allowed to repudiate the execution of the Canaras contract by merely stating "We don't remember signing it, and as far as we are concerned, we didn't sign it." Having found in fact that the contract was executed on May 18, 1972, the court concluded that "at the time it was signed the automatic renewal provision contained in Paragraph Ninth was completely nugatory

---

**3.** Computations were later to be made by the bookkeeper for income taxes, Social Security taxes, etc., to be withheld so as to provide him with a net of $200.00.

since it could not, under any circumstances, be complied with."

Although Canaras claimed damages for an 11 year interval by concluding that the contract twice renewed itself for two additional five-year periods since Lift Truck "did not give him written notice of its election not to renew [the] contract at least nine full months prior to November 1, 1972," he was awarded damages at $2,200.00 (for 11 months) for the breach of a one-year contract beginning May 18, 1972.

The appellant here argues that the trial court impermissibly rewrote his employment contract by holding that Paragraph Ninth was "nugatory", that by the execution of the contract on May 18, 1972, Lift Truck thereby waived the provision providing it the option not to renew the contract. As a subordinate argument he contends that the denial by the principals of Lift Truck of the execution of his contract constitutes a waiver of the right to rely upon the findings that Paragraph Ninth was "nugatory."

In *Merit Music Service, Inc. v. Sonneborn*, 245 Md. 213, 225 A. 2d 470 (1967), where one of the appellees had identified her signature to a contract and admitted it to be her signature, and her husband, though not "so sure," "believed it to be his signature," Judge Finan quoted with approval the language of Chief Judge Sobeloff, speaking for the Court, in *Rossi v. Douglas*, 203 Md. 190, 199, 100 A. 2d 3, 7 (1953), as follows:

> " 'There is no claim here of fraud or duress or mutual mistake, and it is well established that in the absence of these features one having the capacity to understand a written document who reads it, or, without reading it or having it read to him, signs it, is bound by his signature. *Spitze v. B. & O. R.R.*, 75 Md. 162, 23 A. 307; *Columbia Paper Bag Co. v. Carr*, 116 Md. 541, 82 A. 442; *McGrath v. Peterson*, 127 Md. 412, 96 A. 551; *Western Maryland Dairy v. Brown*, 169 Md. 257, 262, 181 A. 468, 471; *Gardiner v. Gardiner*, 200 Md. 233, 88 A.2d 481; *Ray*

*v. Eurice, supra;* [4] *Williston, Contracts,* sec. 90 A; *Restatement of Contracts,* sec. 70. Indeed Williston says that even if an illiterate executes a deed under a mistake as to its contents, he is bound both at law and in equity if he did not require it to be read to him or its object explained. This is everywhere the rule. *Williston, Contracts,* sec. 1577.' " *Id.* 245 Md. at 220, 225 A. 2d at 474.

Judge Finan continued:

"There is a qualification to the above mentioned rule which this Court recognized in *Binder v. Benson,* 225 Md. 456, 171 A. 2d 248 (1961). Judge Hammond (present Chief Judge), speaking for the Court, said (p. 461, 171 A. 2d 250):

'A qualification of the rule is that an apparent manifestation of assent will not operate to make a contract if the other party knows, or as a reasonable person should know, that the apparent acceptor does not intend what his words or other acts ostensibly indicate. Restatement, *Contracts,* Sec. 71(c); 3 Corbin, *Contracts,* Sec. 610; 17 C.J.S. *Contracts,* Sec. 143, p. 497; *Frederich v. Union Electric Light & Power Co.* (Mo.), 82 S.W.2d 79, 86; *General Electric Supply Corp. v. Republic Construction Corp.* (Ore.), 272 P. 2d 201; *Beatty v. Donahue* (Ky.), 249 S.W.2d 33; *Lange v. United States* (C.C.A. 4th), 120 F. 2d 886, 889.' " *Id.* 245 Md. at 221, 225 A. 2d at 474.

Notwithstanding Gent's testimony that he "didn't recall" signing Canaras' contract and that he only intended to sign Applegate's contract and the minutes, and notwithstanding

---

[4.] 201 Md. 115, 125, 93 A. 2d 272, 278 (1952).

that Hufham could not remember having witnessed the signatures on Canaras' contract and they each, as well as Szumlanski, testified that there was no intention on the part of the principals to sign the contract, it was firmly established that the contract had been read, had been fully discussed, by them on a number of occasions.

There is nothing in the facts of this case to justify the application of the exception recognized in *Binder v. Benson,* 225 Md. 456, 461, 171 A. 2d 248, 250 (1961).

Since the trial court found no fraud in the relationship between Canaras and Lift Truck — nor was any duress or mutual mistake found — the holdings in *Rossi v. Douglas,* *supra,* and *Binder v. Benson, supra,* are particularly appropriate in compelling the conclusion that Lift Truck became bound under the contract with Canaras by the signature of its president.[5]

Concerning the formation of a contract, our predecessors, more than 50 years ago in *Buffalo Pressed Steel Co. v. Kirwan,* 138 Md. 60, 113 A. 628 (1921), stated:

> "A contract has been defined as an 'agreement which creates an obligation,' 13 *C.J.* 237, and such an agreement may be defined as the concurrence of two or more persons in a common intent to affect their legal relations, and for the purposes of this case these definitions may be taken as sufficiently accurate. The agreement referred to must rest finally upon an offer made by one party and the acceptance thereof by the other party to that contract. *Brantly, Contracts,* par. 7. An 'offer is a proposal to enter into a contract' (13 *C.J.* 266, also *Bouvier*), and an acceptance is the assent of the party to whom the offer is addressed to its terms. The offer must be certain and definite and the acceptance must 'in every respect meet and correspond with the offer.' 13 *C.J.* 278; *Brantly, Contracts,* par. 9. That is to say both parties to the

---

5. Lift Truck filed no cross-appeal.

contract 'must actually give their assent to that proposal and acceptance, be it what it may, which *de facto* arise out of the terms of their communications.' 1 *Elliott, Contracts,* par. 26." *Id.* 138 Md. at 64, 113 A. at 630.

*See also Post v. Gillespie,* 219 Md. 378, 384, 149 A. 2d 391, 395 (1959).

In *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 150 A. 2d 884 (1959), a construction contract between the parties provided that the work "shall be commenced immediately and shall be substantially completed in 330 days." A dispute arose in the trial as to whether the date named in the written agreement, August 29, 1956, or the date on which the contract was executed by the appellees, September 19, 1956, should prevail in computing the starting date for the 330-day period. In holding that the chancellor had properly admitted parol evidence to show that the contract, although dated earlier, was not in fact executed until the latter date, Judge Prescott (later Chief Judge) for the Court stated:

"It is universally held that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract. It is likewise universally agreed that it is possible for parties to enter into a binding informal or oral agreement to execute a written contract; and, if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed. And the intention of the parties in this respect must be determined by the facts and circumstances in each particular case. *Peoples Drug Stores v. Fenton,* 191 Md. 489, 493, 62 A. 2d 273; *Power Service Corporation v. Joslin,* 175 F. 2d 698, 702, 703 (9th Cir., 1949); 1 *Williston, Contracts* (Rev.Ed.), Sec. 28. It is likewise, just as broadly and consistently held that parol evidence is inadmissible to vary, alter or contradict a writing which is complete and unambiguous, where no

fraud, accident or mistake is claimed, *Glass v. Doctors Hospital, Inc.*, 213 Md. 44, 57, 131 A. 2d 254; but where doubt arises as to the true sense and meaning of the words themselves or *difficulty as to their application under the surrounding circumstances*, the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument. *Vary v. Parkwood Homes, Inc.*, 199 Md. 411, 418, 86 A. 2d 727; *Rinaudo v. Bloom*, 209 Md. 1, 11, 120 A. 2d 184." *Id.* 219 Md. at 665-66, 150 A. 2d at 888. (Emphasis supplied.)

*See also Artukovich v. Pacific States Cast Iron Pipe Co.*, 78 Cal. App. 2d 1, 176 P. 2d 962 (1947); *District of Columbia v. Camden Iron Works*, 181 U. S. 453, 21 S. Ct. 680, 45 L. Ed. 948 (1901).

This principle of law concerning parol evidence, as set forth in *Eastover Stores, Inc. v. Minnix, supra*, has been restated in *Pumphrey v. Kehoe*, 261 Md. 496, 504, 276 A. 2d 194, 199 (1971); *Foreman v. Melrod*, 257 Md. 435, 441-42, 263 A. 2d 559, 562-63 (1970); *Davidson v. Katz*, 254 Md. 69, 76-77, 255 A. 2d 49, 52-53 (1969); *Rice v. Rice*, 246 Md. 212, 217, 227 A. 2d 742, 744 (1967); *Allen v. Steinberg*, 244 Md. 119, 127, 223 A. 2d 240, 245 (1966); *see also* Restatement of Contracts §§ 237, 238 (1932).

No issue was raised in the trial concerning the admissibility of parol evidence; the appellant, as well as the witnesses called by him, Gent, Szumlanski, and Hufham, all gave testimony concerning the submission, discussions, rejections and the signing of Canaras' contract. That evidence was undisputed that notwithstanding that the document had been pre-dated December 1, 1971, by Canaras, it did not in fact come to be signed until May 18, 1972. It was only on that latter date that Canaras' repeatedly submitted offer became accepted by Lift Truck by the signature of Gent, its president. The evidence *dehors* the instrument was properly admissible in ascertaining the effective date of the contract. As the trial court properly found, no contract arose until May 18, 1972, that was the time when the last act

necessary for its formation occurred. *See Chesapeake & Potomac Tel. Co. of Md. v. Allegheny Construction Co.,* 340 F. Supp. 734 (D. Md. 1972).

Parties to a contract may execute an agreement on one date and provide that all the rights, obligations and liabilities thereto will attach respectively as of a retroactive date. Such agreements have been held to be neither void nor objectionable. *See Thornton Bros. Inc. v. Gore,* 252 Miss. 27, 172 So. 2d 425 (1965); *Wright v. Prudential Ins. Co.,* 27 Cal. App. 2d 195, 80 P. 2d 752 (1938); and 17 C.J.S. *Contracts* § 61 (1963). The parties may similarly provide at the time of its execution that the contract is entered into "as of" an earlier date than that on which it was in fact executed; such agreements are then effective retroactively as to the earlier date and the parties are bound accordingly. See *Brewer v. National Surety Corp.,* 169 F. 2d 926, 928 (10th Cir. 1948); *American Credit Indem. Co. v. Hecht,* 137 Ky. 261, 125 S. W. 697, *petition for rehearing overruled,* 129 S. W. 340 (1910); *Matthews v. Jeremiah Burns, Inc.,* 205 Misc. 1006, 129 N.Y.S.2d 841 (Sup. Ct., N. Y. Co. 1954); 17 Am. Jur. 2d *Contracts* § 69 (1964).

There was no evidence offered that at the time the contract was signed the parties agreed that it was being executed "as of" December 1, 1971, nor any evidence of an intention that the rights, obligations and liabilities spelled out therein were to have retroactive effect. Canaras testified that he had told the principals that "if we did not use the December 1st date that all the dates in the contracts would have to be changed to reflect the May 18th date, but that if we signed the contracts with December 1st dates in them that the contracts would be in effect *immediately* without any provisions for curtailing the length of the contracts." Such self-serving declaration was not supported by the testimony of any of the principals whom he called as his witnesses and standing alone — although the dates were not changed — falls far short of establishing by probative evidence that the contract was intended to be retroactive to December 1, 1971.[6] Indeed Canaras' request for one month's

---

6. Canaras was unable to explain why the dates on his contract and on

salary on June 13, 1972, is inconsistent with any contention of retroactivity.

It is, of course, as the appellant contends, under *Hankins v. Public Service Mut. Ins. Co.*, 192 Md. 68, 84, 63 A. 2d 606, 613 (1949), improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships. *See also Compania de Astral, S. A. v. Boston Metals Co.*, 205 Md. 237, 271, 107 A. 2d 357, 372 (1954), 49 A.L.R.2d 646, *cert. denied*, 348 U. S. 943 (1955). Appellant is similarly correct when he asserts that "where a contract is plain and unambiguous there is no room for construction and it must be presumed that the parties meant what they expressed." *See Lawless v. Merrick*, 227 Md. 65, 71, 175 A. 2d 27, 31 (1961); *Weber v. Crown Central Petroleum Corp.*, 214 Md. 115, 132 A. 2d 857 (1957); *Strickler Eng. v. Seminar*, 210 Md. 93, 122 A. 2d 563 (1956). Where, however, "doubt arises as to the true sense and meaning of the words themselves or *difficulty as to their application under the surrounding circumstances*, the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument." *Pumphrey v. Kehoe, supra*, at 504, 276 A. 2d at 199 (emphasis supplied). *See also Foreman v. Melrod, supra; Davidson v. Katz, supra; Allen v. Steinberg, supra.*

"[I]t is equally well settled that where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts collateral to the instrument, may be admitted," *Chesapeake Brewing Co. v. Goldberg*, 107 Md. 485, 488, 69 A. 37, 39 (1908), and "if any doubt arises from the language of a contract as to the intention of the parties, extraneous evidence may be admitted to aid the court in comprehending its meaning," *Sommers v. Dukes*, 208 Md. 386, 394, 118 A. 2d 660, 664 (1955), both cited with approval in *Davidson v. Katz, supra*, and *Schuman v. Gordon Inv. Corp.*, 247 Md. 265, 232 A. 2d 256 (1967).

---

the minutes of the directors and stockholders meetings were not changed from December 1, 1971 to May 18, 1972 — the date on which they were all actually signed.

Although the trial court found the provisions in Paragraph Ninth to be "crystal clear and unambiguous," there was patently an uncertainty and ambiguity concerning the intention of the parties and the relationship *inter sese* of Paragraph Ninth to the first paragraph of the agreement, which undertook to employ Canaras for a one-year term; there was equal "difficulty as to the application of the true sense and meaning of the words themselves [used in Paragraph Ninth] under the surrounding circumstances." The issue before the trial court was whether Lift Truck by the execution of the contract on May 18, 1972, thereby intended to employ Canaras for a six-year term since on that date, the period of time required for notice of non-renewal — nine full months prior to November 1, 1972 (February 1, 1972) — had expired.

*Chew v. DeVries*, 240 Md. 216, 213 A. 2d 742 (1965), involved the interpretation and construction of two clauses in an option; the first provided that the election by the optionee to purchase the property "shall be given the optionors at any time within four (4) years of the date of the option." The second clause provided that the option "shall not be revocable for four years from the date hereof and shall remain in force and effect thereafter until terminated by the optionors; that such termination may be effected at any time after the expiration of the four year period by the optionors giving 90 days prior written notice to the optionee of such termination, provided, however, that no right to terminate it be exercised by the optionors after the optionee has elected to purchase the property."

Chief Judge Prescott, concerning the construction to be given to the provisions in the option, stated:

"There is a well-established rule of contractual construction that where two provisions of a contract are seemingly in conflict, they must, if possible, be construed to effectuate the intention of the parties *as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its*

*purpose and design. Lumber Co. v. Bldg. & Savings Assn.*, 176 Md. 403; *Sagner v. Glenangus Farms*, 234 Md. 156, 167; 17A C.J.S. *Contracts* § 309 (with a long line of decisions collected in n. 95); 17 Am. Jur. 2d *Contracts* § 267. And, if a reconciliation can be effected by a reasonable interpretation, such interpretation should be given to the apparently repugnant provisions, rather than nullify any. 17A C.J.S. *Contracts* § 309, n. 96; 17 Am. Jur. 2d *Contracts* § 267." *Id.* 240 Md. at 220-21, 213 A. 2d at 744. (Emphasis supplied.)

*See also Kasten Constr. Co. v. Rod Enterprises, Inc.*, 268 Md. 318, 328-29, 301 A. 2d 12, 17-18 (1973); *Garfinkel v. Schwartzman*, 253 Md. 710, 720, 254 A. 2d 667, 673 (1969); *Sorensen v. J. H. Lawrence Co.*, 197 Md. 331, 336, 79 A. 2d 382, 385 (1951).

The court in interpreting a contract places itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and to judge of the meaning of the words and the correct application of the language to the things described. *Sorensen v. J. H. Lawrence Co., supra.* If the language under consideration is ambiguous or uncertain the court must then determine the intention of the parties. In such a case the court may consider evidence of extrinsic factors, *i.e.*, negotiations of the parties, the circumstances surrounding execution of the contract, the parties' own construction of the contract and the conduct of the parties. See *Mascaro v. Snelling & Snelling*, 250 Md. 215, 229, 243 A. 2d 1, 8, *cert. denied*, 393 U. S. 981 (1968).

From the extrinsic evidence concerning the negotiations between the parties, the circumstances surrounding the execution of the contract, its subject matter, its purpose and design and the conduct of the parties, there was no intention on the part of Lift Truck as of May 18, 1972, that Canaras be employed for a six-year term.

Paragraph Ninth provided that unless Lift Truck gave Canaras written notice prior to February 1, 1972, his contract of employment would automatically become

renewed for a five-year additional term. Any extension of his contract was conditioned — based upon the language prepared by Canaras — upon his being in the employ of Lift Truck on February 1, 1972, and for a two month period prior thereto. At the time the contract came to be signed on May 18, 1972, this express objective condition, or operative fact, was then impossible of fulfillment. The trial court found that "at the time it was signed the automatic renewal provision contained in Paragraph 9 was completely nugatory since it could not, under any circumstances be complied with." [7]

Judge Levine, for the Court in the recent case of *Chirichella v. Erwin,* 270 Md. 178, 310 A. 2d 555 (1973), after defining a "condition precedent," stated:

> "The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation, 17A C.J.S. *Contracts,* § 338; *see United States v. Schaeffer,* 319 F. 2d 907, 911 (9th Cir. 1963), *cert. denied,* 376 U. S. 943, 84 S. Ct. 798, 11 L.Ed.2d 767 (1964)." *Id.* 270 Md. at 182, 310 A. 2d at 557.

In *Griffith v. Scheungrab,* 219 Md. 27, 146 A. 2d 864 (1958), Judge Hammond (later Chief Judge), writing for the Court, stated:

> "Where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused. An unexcused failure to perform makes it impossible for a breach to

---

7. Parol evidence is admissible to show that a written instrument was not to become *effective as an instrument* until a prior condition or event had occurred. Foreman v. Melrod, 257 Md. 435, 442, 263 A. 2d 559, 562 (1970).

occur and, therefore, no remedy for enforcement is available to the delinquent one. 6 Corbin, *Contracts*, Secs. 1252, 1264, 1266; *Kahn v. Janowski*, 191 Md. 279, 286; *Foster-Porter Enterprises, Inc. v. De Mare*, 198 Md. 20, 36; *Springer v. Korotki*, 215 Md. 310." Id. 219 Md. at 34-35, 146 A. 2d at 868.

*See also Metz v. Heflin*, 235 Md. 550, 201 A. 2d 802 (1964).

As Judge Parke for this Court stated in *Hammaker v. Schleigh*, 157 Md. 652, 147 A. 790, 65 A.L.R. 1285 (1929):

"Where parties enter into a contract upon the common assumption that a particular and essential state of things exists with reference to a substantial subject-matter, the nonexistence of that state of things, through default, of neither party, ends the liability and prevents the accrual of a duty dependent upon it. *Anson on Contracts* (Corbin's Am. Ed.), secs. 374, 373; 3 *Williston on Contracts*, secs. 1937, 1948, 1952, 1953, 1956." *Id.* 157 Md. at 663, 147 A. at 794.

"If a promise is expressly conditional on the rendition of a performance by the other party, or on the happening of any other event, *by a specified time,* no court of law or equity should set aside the limitation and enforce the promise in spite of non-performance of the condition, unless the condition has been excused by the action of the promisor himself or there has been such performance or change of position by the promisee that an unjust forfeiture will result unless the condition is disregarded." 3A A. Corbin, Contracts § 714 (1960). (Emphasis supplied.)

In 5 S. Williston, Law of Contracts § 663 (3rd ed. 1961), it is stated:

" 'If the condition is not fulfilled, the right to enforce the contract does not come into existence. Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties to be

ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract.' [Citing *Lach v. Cahill*, 138 Conn. 418, 85 A.2d 481 (1951); *Knox v. Knox*, 337 Mich. 109, 59 N.W.2d 108 (1953).]

It is ordinarily said that a condition must be something future and uncertain, and it is undoubtedly true that at least from the standpoint of the parties, both futurity and uncertainty are necessary elements. If to their [the parties] knowledge the event has either already happened or cannot possibly happen, the promise is either absolute or *nugatory* from the outset." (Emphasis supplied.) [8]

If the impossibility of performance under Paragraph Ninth was known to Canaras, the promisee (as apparently it was), but not to Lift Truck, the promisor, the impossibility of performance of the condition could not be accepted by Canaras with the understanding or expectation that it would be carried out since it would not be binding. See *Crawford v. Thomas*, 74 Ark. 621, 86 S. W. 285 (1905); *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 618 (Fla. App. 1965); 17A C.J.S. *Contracts* § 462 (1963). Similarly where impossibility of the performance of the condition is known to both the parties at the time of making the agreement there can be no intention of performing it on the one side and no expectation of it being performed on the other. It may well happen — as it did here — that parties execute a writing as their contract which contains a provision of performance and if on the construction of the agreement it appears it was intended to be conditional on the supposed possibility of performance, there is a mistake which renders such provision void. See

---

**8.** Prof. Jaeger argues that this rationale follows logically from an analysis of the definition of a "condition" and an examination of the comments and illustrations presented in Restatement of Contracts §§ 250 *et seq.* (1932).

*Sanders v. Freeland,* 64 N. M. 149, 152, 325 P. 2d 923, 925 (1958), where the vendor, on May 19, 1954, contracted with a purchaser to sell his interest in a farm conditioned upon completion of the purchaser's contract of sale and exchange of his farm to a third person, dated May 14, 1954. The May 19th contract had a completion date of June 10th. The May 14th contract had a settlement date of July 1st. That court, in holding that the impossible conditions could not be performed, stated:

> "The May 19 contract was, therefore, impossible of performance because it had to be completed by June 10 and was conditioned upon completion of the May 14 contract of sale which could not be completed until July 1. Impossible conditions cannot be performed; and if a person contracts to do what at the time is absolutely impossible, the contract will not bind him, because no man can be obligated to perform an impossibility." *Id.* 325 P. 2d at 924-25. [Citations omitted.]

*See also Faria v. Southwick,* 81 Idaho 68, 337 P. 2d 374 (1959), citing with approval and quoting from *Hammaker v. Schleigh, supra* and *Bellom v. Schindler,* 130 Misc. 503, 224 N.Y.S. 429 (Mun. Ct., N. Y. Co. 1927); *Paddock v. Mason,* 187 Va. 809, 48 S.E.2d 199 (1948); *LeRoy v. Jacobosky,* 136 N. C. 443, 459-60, 48 S. E. 796, 801, 67 L.R.A. 977 (1904).

Since the condition in the renewal clause of Canaras' contract was impossible of performance by virtue of the expiration of time antecedent to the date of its execution, it must be held to have been "nugatory" and incompatible with the provisions of Paragraph One in the absence of any extrinsic evidence that the parties intended the agreement to be retroactive to December 1, 1971.

The rule that language in a contract prepared and concluded by one party is to be construed against that party if there is any ambiguity or uncertainty, as laid down in *Lakrest Dev. Co. v. Eisele,* 258 Md. 45, 50, 265 A. 2d 187, 189 (1970); *Kelley Constr. Co. v. Washington Suburban Sanitary Comm.,* 247 Md. 241, 250, 230 A. 2d 672, 678 (1967); and

*Cadem v. Nanna,* 243 Md. 536, 544, 221 A. 2d 703, 708 (1966); seems to be particularly applicable to the facts in this case in view of the confidential relationship found to have existed between Canaras as attorney and Lift Truck, his client, and his inability, as the drafter of the agreement, to explain why the dates therein had not been changed to conform to the date of its execution.

An interpretation which makes a contract fair and reasonable will be preferred to one which leads to either a harsh or unreasonable result. See *Baltimore City v. Industrial Electronics, Inc.* 230 Md. 224, 186 A. 2d 469 (1962); *Garfinkel v. Schwartzman, supra;* and *Sorensen v. J. H. Lawrence Co., supra.* In *Sorensen* it is stated: "Where language of a contract is open to an interpretation which is reasonable and in accordance with the general purpose of the parties, the hardship of a different interpretation is strong ground for belief that such a meaning was not intended." *Id.* 197 Md. at 339, 79 A. 2d at 386.

It appears from the extrinsic evidence concerning all the circumstances surrounding the execution of the agreement, its purpose and design, and the conduct of the parties, that it would be unreasonable and not in accord with the general purpose of the parties to so interpret the agreement to hold that the principals of Lift Truck intended to create an employer-employee relationship with Canaras for a six-year term — much less an 11-year term — as he contends. The interpretation that at best Lift Truck intended to employ him for a one-year term is more reasonable and more in accord with the general purpose.

The appellant's contention that Lift Truck waived the provisions of Paragraph Ninth by executing the contract on May 18, 1972, is equally without substance.

"A waiver is the intentional relinquishment of a known right, or of such conduct as warrants an inference of a relinquishment of such right. A waiver, strictly so called, is the result of an intentional relinquishment of a known right." *Enterprise Mfg. Co. v. Oppenheim,* 114 Md. 368, 402, 79 A. 1007, 1012 (1911). *See also Nichols v. Cities Serv. Oil*

*Co.*, 171 F. Supp. 400, 409 (D. Md. 1959); *Schindel v. Danzer*, 161 Md. 384, 396-97, 157 A. 283, 288 (1931).

In *Evelyn v. Raven Realty, Inc.*, 215 Md. 467, 471-73, 138 A. 2d 898, 900 (1958), the buyer of a tract of land at a sale price of $700.00 brought suit for specific performance; $100.00 had been paid at the time of the execution of the contract on December 16, 1955, the balance was payable within 30 days. The contract provided that "time was of the essence" and that failure to comply would constitute a forfeiture of the deposit. The buyer claimed that on January 10, 1956, the seller orally granted the buyer an extension of 60 days from January 16, 1956, within which to pay the balance of the purchase money. Although the evidence showed that the buyer was ready, willing and able to consummate the sale on March 7, 1956, there was no evidence as to whether the buyer could have performed the contract on January 16, 1956 — within the 30 day period originally specified in the contract. The court, in denying specific performance, held that the burden was upon the plaintiff-buyer to establish not only the waiver but the reliance upon it and that it could have performed the contract within the original time limit. Judge Horney, writing for the Court in connection with the terms "waiver" and "estoppel", stated:

"There is even confusion in the use of the terms "waiver" and "estoppel". Many law writers and courts make no effort to distinguish them and use the terms interchangeably. A clarification may not be amiss. When a seller has promised to convey land on the express condition that payment of the purchase price must be made on or before a specified date, payment on time is the condition which a buyer must perform. But, if the seller merely states to the buyer that he does not insist on timely payment, he thereby eliminates the condition, and such statement constitutes a "waiver". (Footnote omitted) Being the seller's voluntary action, it is not necessary for the buyer to

give any consideration for the waiver, or that the buyer change his position, in reliance thereon, in order for the waiver to be legally effective. If, however, the seller foresees or should have foreseen that the buyer would materially change his position in reliance on the waiver, and the buyer does so, then the seller is "estopped". The seller's action is still a "waiver", but the resulting action in reliance thereon by the buyer creates the "estoppel". Thus, "waiver" consists of the voluntary action of the seller alone, while an "estoppel" requires the action of both the seller and the buyer.[3] (3. For an exposition of the difference between a "waiver" and an "estoppel", see 3 *Corbin, Contracts*, Sec. 752; *Colbath v. H. B. Stebbins Lumber Co.*, 127 Me. 406, 144 A. 1 (1929); and *Northwestern National Life Ins. Co. v. Ward*, 56 Okla. 188, 155 P. 524 (1915).)

Contrasting a waiver with the doctrine of equitable estoppel, Section 689 of 3 *Williston, Contracts* (Rev. ed: 1926), states the proposition thus:

'The same principle is applicable to other excuses for non-performance of a promise besides breach of conditions. Wherever the promisee has allowed a legal excuse to arise, relying upon express or implied statements of the promisor that the latter would not avail himself of the excuse, there is waiver. This is a principle distinct from the ordinary equitable estoppel, since the representation is promissory, not a misstatement of an existing fact. * * * To bring the case within the reason of the rule it is essential that the promisee could and would have performed the condition, or would not have allowed the defense to arise, had it not been for the promisor's waiver. For if the promisee could not have entitled himself to performance of the promise, even had there been no waiver, there is no equitable reason

> why the promisor should not take advantage of the breach of condition or other defense. He has promised that he would not, but his promise was not only wholly gratuitous, but has not been acted on.'"

This holding from *Evelyn* was restated with approval in *Kimm v. Andrews*, 270 Md. 601, 625, 313 A. 2d 466, 479 (1974).

See *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 248 Md. 267, 235 A. 2d 735 (1967), in which the court held that where the purchasers were ready, willing and able to perform a contract for the sale of a tract of land on the settlement date, the seller's failure to perform the conditions precedent prior to that date and their agreement to extend the date of settlement amounted to a waiver of the original settlement date and had the effect of waiving the requirement that "time was of the essence" for the settlement and thereby established a requirement that the settlement "merely be within a reasonable time." See *also Twining v. Nat'l Mortgage Corp.*, 268 Md. 549, 302 A. 2d 604 (1973).

In *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 200 A. 2d 166 (1964), our predecessors stated:

> "Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. *Gould v. Transamerican Associates*, 224 Md. 285. And acts relied upon as constituting a waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing such provisions. *Maryland Casualty Co. v. East Balt. Driving Ass'n*, 135 Md. 105." 234 Md. at 531, 200 A. 2d at 172.

"A waiver may be either verbal or in writing; and it is not necessary that the waiver should be direct and positive. It

may result from implication and usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended. The assent must, however, be clearly established and will not be inferred from doubtful or equivocal acts or language." 5 S. Williston, Law of Contracts § 678 (3rd ed. 1961).

Before there can be a waiver, however, there must be evidence of such conduct on the part of the party possessing the right to show a relinquishment of that right. *See Kimm v. Andrews, supra* (extension of time negotiated by the attorney for the seller was held to be a waiver of the provision that time was of the essence); *Pumphrey v. Pelton*, 250 Md. 662, 245 A. 2d 301 (1968) (knowledge over a period of years of a continuing breach and no action to enforce the breach); *Shoreham Developers, Inc. v. Randolph Hills, Inc., supra* (sellers' failure to perform conditions precedent prior to settlement and agreement to extend the settlement date constituted a waiver of the original settlement date); *Food Fair Stores, Inc. v. Blumberg, supra* (failure to demand strict compliance and to formally demand rent payments in accordance with the provisions of the agreement were held not to constitute a waiver); *John B. Robeson Associates, Inc. v. Gardens of Faith, Inc.*, 226 Md. 215, 172 A. 2d 529 (1961) (the keeping of the contract in existence and the acceptance of performance under it after a known breach constituted a waiver of the breach); *Nichols v. Nicholas*, 217 Md. 79, 141 A. 2d 746 (1958) (the acceptance of payment after the expiration of the date fixed for payment constituted a waiver of the time provision for payment); *Lissau v. Smith*, 215 Md. 538, 138 A. 2d 381 (1958) (expression of intention by vendor, before time of performance, not to insist on timely or exact performance constituted waiver of the provisions in the contract as to time).

The burden was upon Canaras not only to establish a waiver but also that he relied upon it. *Evelyn v. Raven Realty, Inc. supra.* There was no evidence offered that at the time the contract came to be executed — or thereafter — the principals of Lift Truck made any statements to Canaras, nor is there any evidence of any conduct on their part from

which it could be said that there was an intentional relinquishment of the rights under Paragraph Ninth — any more than there was evidence that by the execution of the contract it was intended that it be made retroactive to December 1, 1971. At that time there was no right in Lift Truck concerning the renewal option since by virtue of impossibility the right was nonexistent. There was equally no evidence on the part of Canaras of any reliance upon the appellees' conduct or any change in his position to his detriment that could be said to result in an "estoppel." *Chertkof v. Philadelphia B. & W. R.R.*, 254 Md. 557, 255 A. 2d 14 (1969); *Savonis v. Burke*, 241 Md. 316, 216 A. 2d 521 (1966).

As his final thrust Canaras contends that Lift Truck, having denied the existence of any agreement in the trial court constitutes a waiver on its part that the contract was limited to a term of one year, effective May 18, 1972. He cites *Foard v. Snider*, 205 Md. 435, 448, 109 A. 2d 101, 107 (1954), as authority for this contention.

It is true that in *Foard v. Snider, supra,* Judge Hammond, for the Court, stated: "It has been repeatedly held that a denial of liability on one ground may be the waiver of the right to rely on another." 205 Md. at 448, 109 A. 2d at 107. This statement was repeated in *National School Studios, Inc. v. Mealey*, 211 Md. 116, 128-29, 126 A. 2d 588, 594-95 (1956). Both cases are factually distinguishable. In *Foard v. Snider, supra,* action had been brought for a declaratory decree to determine whether a deed and bill of sale constituted absolute conveyances of the property described therein or whether the instruments were given merely to secure a debt and for a determination as to whether or not such an agreement was enforceable. In their answer in the declaratory proceedings the appellees declared of record that they had ignored the option provision because of their belief that they possessed a fee simple title to the property and that the option was unenforceable. On appeal it was held that the sellers were not permitted to deny liability by arguing that the option had expired before it was properly exercised — a position which was inconsistent with the

defense they had pleaded and asserted at the trial. Similarly, in *National School Studios, Inc. v. Mealey, supra,* an injunction was sought for the specific performance of a covenant in a contract by the appellee who had been a salesman of school children's photographs. Mealey, in his answer under oath, gave as his reasons for terminating the contract that National had breached the conditions of his employment and he had been thereby forced to terminate his contract. His answer under oath was held to foreclose and to have been a waiver by Mealey of the defenses he undertook to assert since he had continued to consider the contract as orally modified to have been in full force and effect up until the time he cancelled it without notice.

Lift Truck has not in this Court presented inconsistent defenses, it concedes the existence of a one-year enforceable contract effective May 18, 1972.

It was Canaras who called Gent, Szumlanski and Hufham — as his witnesses — and elicited from them that they had no intention of executing his employment contract and no recollection of having executed it. The issue as to whether or not Paragraph Ninth was intended by the parties to be an enforceable provision in the agreement was raised by the appellee's general issue plea and was submitted before the trial court by testimony elicited by Canaras. That evidence did not constitute a waiver on the part of Lift Truck to rely in this Court on the conclusions reached in the trial court.

Our review of the case upon both the law and the evidence convinces us that there was substantial evidence to support the trial court's findings and its conclusions of law and that the judgment must be affirmed.

> *Judgment affirmed; costs to be*
> *paid by the appellant.*