**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 13, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BANK OF OKLAHOMA, N.A.,

       Plaintiff-Appellant,

v.

MONUMENTAL LIFE INSURANCE
COMPANY,

       Defendant-Appellee.

No. 06-6137
(D.C. No. 04-CV-1517-C)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **EBEL**, and **GORSUCH**, Circuit Judges.

In this case we confront a contract dispute between the subrogee of a
purported insured under a mortgage life insurance policy, the Bank of Oklahoma
("Bank"), and the insurer, Monumental Life Insurance Company ("Monumental").
For reasons set forth below, we affirm the district court's grant of summary
judgment in favor of Monumental.

✳   ✳   ✳

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

In July 1999, David Aumann financed the purchase of his home with the Bank. During the financing process, the Bank introduced Mr. Aumann to a mortgage life insurance policy (the "Policy") from Monumental; the purpose of the Policy was to pay off the balance of Mr. Aumann's mortgage in the event that he died. The Bank offered the Policy to Mr. Aumann pursuant to an agreement it had reached with Monumental for the marketing of Monumental's financial services to the Bank's mortgage customers (the "Marketing Contract"). App. 197-204. In mid-July 1999, Monumental approved Mr. Aumann's application for life insurance and issued a certificate of insurance with an effective date of September 1, 1999. App. 84-91.

The Policy provided, in pertinent part, that Mr. Aumann's coverage would be terminated automatically if (i) he failed to pay the requisite premium, subject to a 31-day grace period, or (ii) the loan was transferred by the Bank to another lender. App. 87. If coverage ended for reasons other than Mr. Aumann's failure to pay premiums (*e.g.*, if the Bank transferred the mortgage to another lender), the Policy afforded Mr. Aumann the option of converting his mortgage life insurance coverage into an individual policy by submitting an application to Monumental. App. 88. Under the terms of the Policy, however, Mr. Aumann was required to apply for any such conversion within 31 days after coverage ended. *Id.*

On July 21, 1999, the Bank notified Mr. Aumann that his first mortgage

payment was due on September 1, 1999, in the amount of $574.92. App. 189.

A few weeks later, on August 12, 1999, the Bank also notified Mr. Aumann that,

effective September 1, 1999 (the date his first mortgage payment was due), his

mortgage would be transferred to and serviced by Countrywide Home Loans, Inc.

("Countrywide"). App. 99-101. It is undisputed that Mr. Aumann never made a

premium payment, timely or untimely, to Monumental, the Bank, or Countrywide.

It is similarly undisputed that the Bank transferred Mr. Aumann's loan to

Countrywide, thereby triggering the automatic termination provision in the Policy,

and that Mr. Aumann never requested a conversion policy from Monumental

pursuant to the Policy's terms.[1]

In August 2002, Mr. Aumann passed away and his wife, Linda Aumann,

subsequently asked Monumental to pay off her mortgage. Monumental declined

her claim on the ground that the Policy never became effective because Mr.

Aumann never paid the Policy premiums. Mrs. Aumann filed suit against various

defendants in state court, alleging that Monumental and Countrywide

unreasonably denied her claims under the Policy. Countrywide removed the suit

based on diversity, and Mrs. Aumann subsequently amended her claim to add the

---

[1] There is a dispute of fact as to whether Mr. Aumann received the second page of a three-page letter from the Bank which clearly would have given him notice that he needed to contact Monumental when his mortgage was transferred from Bank. (*Compare* App. 100 (letter), *with* App. 147 (denial of receipt of letter).) This dispute is not material to our decision.

Bank as a defendant. After discovery, Monumental moved for summary judgment. Before the court decided that motion, Mrs. Aumann and the Bank settled their claims, and Mrs. Aumann assigned all her rights and interest in this lawsuit to the Bank. App. 237. The Bank was thus dismissed as a defendant and substituted as the new party plaintiff; it responded to Monumental's summary judgment motion. The Bank subsequently settled its claims with Countrywide, and dismissed Countrywide from the lawsuit. The district court then granted Monumental's summary judgment motion.

∗   ∗   ∗

We need not decide whether coverage never became effective under the Policy by virtue of nonpayment, or whether the Policy was terminated by the Bank's transfer of Mr. Aumann's loan to Countrywide. We need not do so because we hold, as did the district court in its thoughtful and detailed opinion, that any possible coverage under the Policy surely terminated no later than the expiration of the 31-day grace period following the date the initial payment was due from Mr. Aumann. Simply put, because Mr. Aumann failed to make a payment by October 2, 1999 (31 days following September 1), any coverage that might have once existed certainly ceased by that date. *See* App. 87 ("Your coverage automatically ends on the first of the following dates . . . (2) the end of the period for which any required premium payment has not been made, subject to

-4-

the Grace Period . . . ."); App. 88 ("We provide a 31 day grace period for the payment of each premium due after the first premium.").  The Policy's provision along these lines – allowing for the cessation of contractual obligations when payment is not forthcoming despite a reasonable grace period – is treated as valid, enforceable, and, indeed, essential under Oklahoma law for obvious and equitable reasons.  *See Gen. Am. Life Ins. Co. v. Brown*, 56 P.2d 809, 812 (Okla. 1936) ("[I]t is quite generally held that the provisions of an insurance policy requiring prompt payment of the premiums, and the provision for lapse or cessation of the policy for nonprompt payment are valid, essential, and enforceable provisions of the contract." (internal quotation omitted)).

We also reject the Bank's separate argument that Monumental is liable for an alleged breach of its Marketing Contract with the Bank.  While the Marketing Contract required Monumental to "perform all agent . . . functions in connection with the insurance coverages" for the Bank, nothing in this language unambiguously imposes on Monumental a duty to notify Mr. Aumann that it had not received payments under the Policy, as the Bank contends.  App. 184.  Meanwhile, as the district court properly noted, Maryland law, which governs the interpretation of the Marketing Contract, prohibits a court from creatively reimagining the terms and import of the parties' contract "simply to avoid hardships."  *See Canaras v. Lift Truck Servs., Inc.*, 322 A.2d 866, 873 (Md. App.

1974).  Further and in any event, the Bank has failed to offer a theory under which it would be entitled, standing in Mrs. Aumann's shoes, to recover for any putative breach by Monumental of an agreement to which Mr. Aumann was never a party.  To be sure, the Bank has suggested to us that Mr. Aumann was a third party beneficiary of the Marketing Contract, but this argument was never presented to the district court and therefore may not be pursued on appeal.  *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1270-71 (10th Cir. 2000) ("When an issue has not been properly raised below, to preserve the integrity of the appellate structure, we should not be considered a second-shot forum where secondary, back-up theories may be mounted for the first time." (internal quotation and alteration omitted)).[2]

Finally, contract arguments aside, the Bank asserts that Monumental is liable under promissory estoppel doctrine.  But the only statements made by

---

[2]  Even were we to consider the Bank's argument, under Maryland law a contract may be enforced by a third party only when the contract was intended for the benefit of that third party.  "'In order to recover it is essential that the beneficiary shall be the real promisee; i.e. that the promise shall be made to him in fact, though not in form.  It is not enough that the contract may operate to his benefit.  It must clearly appear that the parties intend to recognize him as the primary party in interest and as privy to the promise.'" *Century Nat'l Bank v. Makkar*, 751 A.2d 1, 6 (Md. App. 2000) (quoting *Marlboro Shirt Co. v. Am. Dist. Tel. Co.*, 77 A.2d 776, 777 (Md. 1951)).  We have been pointed to no evidence in the record before us and no legal authority to support the notion that Mr. Aumann was the intended primary beneficiary of the Marketing Contract, which defined the nature of the business relationship between the Bank and Monumental.

Monumental to Mr. Aumann to which we have been directed are set forth in a single letter from Monumental to Mr. Aumann: "We look forward to providing you with peace of mind for years to come. . . . So we'll keep in touch from time to time to let you know about other [] products that might interest you." App. 83. Neither of these statements constitutes a promise by Monumental that it would notify Mr. Aumman if and when he failed to pay his insurance premium in a timely manner and thereby risk forfeiting his mortgage insurance coverage, let alone the sort of "clear and unambiguous" promise, *Russell v. Bd. of County Comm'rs*, 952 P.2d 492, 503 (Okla. 1997), Oklahoma law requires before courts may override the parties' contractual terms and trigger the invocation of promissory estoppel doctrine.[3]

＊　＊　＊

For the foregoing reasons, we AFFIRM the grant of summary judgment for Monumental.

ENTERED FOR THE COURT

---

[3] Because, as described above, Monumental was not liable to pay Mrs. Aumann under the Policy, the district court also properly granted summary judgment on the Bank's additional claim for a bad faith breach. *See Davis v. GHS Health Maint. Org., Inc.*, 22 P.3d 1204, 1210 (Okla. 2001) ("[A] determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract.").

Neil M. Gorsuch
Circuit Judge